# **Exhibit DD**

Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006

T   +1 202.887.4000
F   +1 202.887.4288
akingump.com



Raphael A. Prober
+1 202.887.4319/fax: +1 202.887.4288
rprober@akingump.com

## CONFIDENTIAL TREATMENT REQUESTED
November 15, 2023

The Honorable Elizabeth Warren
United States Senate
309 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Richard J. Durbin
United States Senate
711 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Mazie K. Hirono
United States Senate
109 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Jeffrey A. Merkley
United States Senate
531 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Richard Blumenthal
United States Senate
706 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Ron Wyden
United States Senate
221 Dirksen Senate Office Building
Washington, D.C., 20510

The Honorable Bernard Sanders
United States Senate
332 Dirksen Senate Office Building
Washington, D.C. 20510

The Honorable Peter Welch
United States Senate
SR-124 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Cory A. Booker
United States Senate
717 Hart Senate Office Building
Washington, D.C. 20510

Re:     October 24, 2023 Letter to YesCare Corp. and Tehum Care Services, Inc.

Dear Senator Warren, Senator Durbin, Senator Hirono, Senator Merkley, Senator Blumenthal, Senator Wyden, Senator Sanders, Senator Welch and Senator Booker:

On behalf of YesCare Corp. ("YesCare"), and as discussed with staff, I write in response to your letter dated October 24, 2023 (the "Letter"), in which you raised questions related to the



November 15, 2023
Page 2

divisional merger transaction completed by Corizon Health, Inc. ("Corizon") and certain of its affiliates in 2022, and the subsequent chapter 11 filing by Tehum Care Services, Inc ("Tehum"). In this letter, we are providing responsive information to the extent information is available to YesCare. As discussed with staff, we understand that Tehum's counsel plans to submit a separate response that provides additional information specific to Tehum.

In the years leading up to the divisional merger transaction discussed in the Letter, Corizon's financial position had deteriorated due to a confluence of factors, including declining revenue, compressed margins driven by increased healthcare delivery costs resulting from the COVID-19 pandemic, substantial debt obligations, and continued exposure to liability extending from pending lawsuits. By late 2021, Corizon's financial situation had become dire. In May 2022, in an effort to create a viable ongoing (albeit, smaller) business that continued to provide critical services to its continuing clients and employing thousands of healthcare professionals while winding down the larger business structure that was associated with the legacy Corizon business, Corizon effectuated the divisional merger transaction, as permitted by Texas law. Pursuant to that merger transaction, Corizon (now, Tehum) retained its expired and inactive customer contracts as well as certain liabilities specified in the merger agreement, the majority of which related to the expired and inactive customer contracts. But Corizon also received certain benefits and assets in the transaction, including the release of nearly $100 million in secured debt obligations that were allocated to CHS TX, Inc. (which was subsequently acquired by YesCare), the right to draw on a $15 million funding agreement, and $1 million in cash. CHS TX, Inc. (now, YesCare) also was allocated certain assets and liabilities related to employees and continuing customer contracts along with the nearly $100 million in secured debt of Corizon, in the transaction.

While Tehum initially worked towards an out-of-court wind down of its business following the divisional merger, the liability it faced in several hundred pending lawsuits made doing so impossible. On February 13, 2023, Tehum filed its chapter 11 petition. The alternative would have produced inequitable results: those claimants who were able to obtain judgments and recover damages quickly would have depleted Tehum's assets, leaving other creditors unable to recover. Tehum's bankruptcy filing prevented that outcome by providing a single forum in which Tehum and its creditor constituencies could negotiate a fair settlement that maximized the recoveries available to all creditors, including individual litigation claimants. Under the settlement currently proposed by the *Debtor and Official Committee of Unsecured Creditors' Second Amended Joint Chapter 11 Plan* (the "Plan")—which is supported by both Tehum and the Official Committee of Unsecured Creditors (the "Committee"), a fiduciary to all Tehum's unsecured creditors—the unsecured creditors will recover significantly more than they would have recovered in a liquidation scenario. Nonetheless, the unsecured creditors (including the holders of litigation claims against Tehum) are entitled to vote on the Plan and proposed

**Akin**

November 15, 2023
Page 3

settlement embodied therein.  Those claimants also have the option of opting out of the settlement and continuing to pursue their claims against Tehum independent of the bankruptcy settlement.

## Responses to Senate Questions

1. *Please provide a full description of YesCare and Tehum's leadership and stakeholder structure, as well as the leadership and ownership of all of the entities' parent companies, and YesCare's latest corporate governance plan. In your response, please include the identities of each natural person that directly or indirectly holds an equity interest in Perigrove 1018 LLC and/or YesCare Holdings LLC, and the size of the membership interest(s) held by that natural person.*

YesCare's executive leadership team includes the following individuals: Jeffrey Sholey, Chief Executive Officer; Jimmy Sprouse, Chief Financial Officer; Bill Carr, Chief Operating Officer; Scott King, Chief Legal Officer; Dr. Gregory Ladele, Chief Medical Officer.  YesCare's clinical, operations, client services, and corporate field services departments include a number of individuals in leadership positions.  YesCare's Bylaws, which cover matters related to YesCare's corporate governance, are attached hereto as **Exhibit A**.

YesCare is wholly owned by YesCare Holdings, LLC.  The ownership structure of YesCare Holdings, LLC is not information that is publicly available or known to YesCare.

Tehum is the appropriate party to provide information regarding its leadership and stakeholder structure.

2. *In a 2023 deposition, Tehum director Isaac Lefkowitz admitted to owning a stake in Perigrove, the private equity firm that took over Tehum. What role does Mr. Lefkowitz currently play within YesCare, Tehum, or any entities related to YesCare or Tehum?*

Isaac Lefkowitz serves as a director of YesCare but has no role at any other entities within YesCare's corporate structure.  Mr. Lefkowitz also serves as a director of various entities with which YesCare has solely contractual relationships.

Tehum is the appropriate party to address Mr. Lefkowitz's role with Tehum and any of its related parties.

3. *How many claims against Corizon, Tehum, YesCare, or any affiliated entities were enjoined following Tehum's motion to extend and enforce the automatic stay?*



November 15, 2023
Page 4

    a.  *The estimated number of claims that will be affected by Tehum's bankruptcy filing.*

    b.  *The number of claims related to each of the following categories and the aggregate settlement amount for each: medical malpractice, employment, and contract breach.*

Tehum is the appropriate party to address these questions with respect to claims against Tehum and/or Corizon. Pursuant to the Bankruptcy Court for the Southern District of Texas's order dated May 18, 2023, 15 lawsuits that name YesCare as a co-defendant were stayed.[1] YesCare is a non-debtor indemnified party in each of these lawsuits, which include various claims that are categorized in Exhibit 1 to the Bankruptcy Court's order.[2] One such lawsuit—*Hyman v. YesCare Corp.*, No. 3:22-cv-01081 (M.D. Tenn.)—has since been resolved and was voluntarily dismissed.

    c.  *A list of all claims by creditors and the status of those claims.*

The claims register is available online, here: https://www.kccllc.net/tehum/register. The status of all the claims depends upon whether or not the Plan is confirmed and whether or not claimants opt out of the settlement and releases embodied therein. Tehum is the appropriate party to provide additional details regarding the status of claims filed in its chapter 11 case.

4.  *Please provide a list of the entities and individuals that were involved in negotiating the global settlement filed September 29, 2023. In addition, please describe the role of Elizabeth Freeman in the negotiations, and list the individuals at YesCare and Tehum that were aware of Ms. Freeman's romantic relationship with Judge David Jones, who mediated the negotiations.*

YesCare's involvement in settlement discussions was limited to negotiations around the release provisions that affect YesCare and its officers and directors. The following entities and individuals were involved in negotiating the global settlement filed on September 29, 2023:

- Tehum Care Services, Inc.

---

[1] *Order (I)(A) Declaring that the Automatic Stay Applies to Certain Claims and Causes of Action Asserted Against Certain Non-Debtors and (B) Extending the Automatic Stay to Certain Non-Debtors, or in the Alternative, (II) Preliminarily Enjoining Such Actions, In re Tehum Care Services, Inc.*, Adv. Pro. No. 23-03049, Docket No. 43.

[2] *Id.* at Ex. 1.

**Akin**

November 15, 2023
Page 5

- o Tehum's independent director, Russell Perry of Ankura Consulting Group, LLP, participated in the mediation.
- o Gray Reed serves as bankruptcy counsel for Tehum. Gray Reed Partners Jason Brookner, Amber Carson, Aaron Kaufman, and Lydia Webb all participated in the mediation.

- The Official Committee of Unsecured Creditors
  - o The Committee members are: Rachell Garwood (as a representative of a putative class), Latricia Revell, St. Luke's Health System, Ltd., Capital Region Medical Center, Maxim Healthcare Staffing Serv., Inc., Saint Alphonsus Health System, Inc., and Truman Medical Center, Inc. The members attended the mediation virtually. The Committee Chair, David Barton, participated in the mediation in person as the Committee representative.
  - o Counsel to the Committee, Nicholas Zluticky and Zachary Hemenway, participated in the mediation.

- YesCare
  - o Former counsel for YesCare, Elizabeth C. Freeman, participated in the mediation.
  - o ████████████████████████████████████████████

- M2 LoanCo, LLC, M2 Holdco, LLC, Perigrove 1018, LLC, Perigrove, LLC, Geneva Consulting, LLC, PharmaCorr, LLC
  - o Melissa S. Hayward participated in the mediation as counsel for each of the foregoing entities.
  - o Isaac Lefkowitz participated in the mediation as a representative of each of the foregoing entities.

Elizabeth Freeman's involvement in the mediation was minimal. No individuals from YesCare were aware of her referenced relationship with the mediator.

5. *With regard to Corizon's use of the divisional merger process to separate its assets from its liabilities:*



November 15, 2023
Page 6

    a. *What was the rationale for determining which assets it would transfer or assign to Tehum and which it would shield from the reach of creditors through YesCare?*

Pursuant to the divisional merger, Tehum was allocated certain assets that were not necessary to sustain a going concern business.  The assets allocated to YesCare were related to its operation on a go-forward basis.

    b. *What was the total value of Corizon's assets at the time of the divisional merger?*

Tehum is the appropriate party to address the value of Corizon's assets at the time of the divisional merger.

    c. *Please list all of the assets that were transferred to YesCare/CHS TX, Inc. and their cumulative value (excluding any liens on the assets).*

The following assets were transferred to YesCare in connection with the divisional merger transaction: (i) 100% of the membership interests in the entity Corizon Health of New Mexico, LLC; (ii) various contracts, agreements, and leases of Corizon; (iii) all services agreements with any professional corporations or professional associations that correspond to any of the transferred agreements; (iv) any and all furniture, fixtures, equipment, inventory and all other assets (whether tangible or intangible) used in, or necessary to, the conduct of the business of Corzion, or the service of any transferred contracts (excluding contracts that remained with Corizon); (v) all assets of employee benefit plans of Corizon; (vi) all cash in Corizon's bank accounts, less $1 million that remained in a Corizon, LLC bank account; (vii) all but two bank accounts; (viii) all trademarks, tradenames, domain names, trade secrets and other intellectual property relating to Corizon or Corizon Health of New Mexico, LLC; (ix) all receivables and other current assets of Corizon except to the extent such receivables and other current assets relate to assets to remain with Corizon; (x) copies of all books and records of Corizon to the extent relating to YesCare assets or liabilities; (xi) any owned real estate asset of Corizon; (xii) all claims or counterclaims against third parties to the extent relating to YesCare assets or liabilities; (xiii) all permits and licenses from the following regulatory agencies required or used to conduct the operations of Corizon in connection with the YesCare assets, including permits or licenses issued by EEOC, OSHA, State Boards of Pharmacy, DEA, NLRB, EPA, State Departments of Insurance, OCR, CLIA and DOL; (xiv) except for certain Arizona insurance policies (the "AZ Policies"), all insurance policies issued to Corizon or any of its affiliates and any other insurance policies under which Corizon or any of its affiliates are or may be entitled to rights or benefits as a named insured, insured, additional insured, successor, beneficiary or otherwise, and all rights to make claims under or in respect of such insurance



November 15, 2023
Page 7

policies, subject to certain exceptions; (xv) any recovery under the foregoing insurance policies of insurance proceeds for any YesCare liabilities or assets, net of any costs of recovery (including any legal fees or expenses), deductibles, retentions, premium adjustments, retroactively rated premiums or other self-insurance features paid by the remaining Corizon entity; (xvi) all rights to make claims under or in respect of the AZ Policies, subject to certain exceptions; (xvii) all cash collateral held by AIG for Corizon's workers' compensation program, which totaled approximately $17,500,000 as of the effective date of the merger; and (xviii) all of Corizon's rights and interests in and with respect to Corizon Health Political Action Committee.

In exchange for these assets, YesCare also was transferred certain liabilities, including (i) a nearly $100 million secured debt obligation; (ii) all lawsuits claims, liabilities, costs, expenses or losses arising from, related to, or in connection with the contracts YesCare received; (iii) any lawsuits, claims, liabilities, costs, expenses or losses arising from, related to, or in connection with employee benefits plans (including 401k plans and health insurance plans, but excluding any long term incentive plans) of Corizon; (iv) any lawsuits, claims, liabilities, costs, expenses or losses arising from, related to, or in connection with the employment of any officers or other employees YesCare, excluding under any long term incentive plans; (v) all other liabilities and obligations of every kind and character to the extent arising from, related to or in connection with the YesCare assets, whether arising before, at or after the merger's effective date, but excluding any liabilities to remain with Corizon; (vi) all liabilities and obligations under the AZ Policies and insurance policies transferred to YesCare for deductibles, retentions, premium adjustments, retroactively rated premiums or other self-insurance features incurred or paid on account of any YesCare liabilities or assets; and (vii) any settlement payment obligations of Corizon relating to lawsuits, claims, liabilities, costs, expenses, relating to or in connection with the contracts transferred to YesCare.

The cumulative value of these assets is not information that is publicly available.

    d. *Please list all of the liabilities that were transferred to Corizon, later Tehum, and their cumulative value.*

Tehum is the appropriate party to provide this information.

6. *Please list all of the assets that were transferred to affiliated entities other than YesCare/CHS TX, Inc. between December 1, 2021 and the date of Tehum's bankruptcy filing.*

Tehum is the appropriate party to provide this information.



November 15, 2023
Page 8

7. *What is the total value of YesCare's current assets?*

The total value of YesCare's current assets is not information that is publicly available.

8. *What is the total value of Tehum's current assets? Please include a full accounting of any funding agreement, lump sum payment, or other revenue stream provided to Tehum following the divisional merger process.*

Tehum is the appropriate party to provide information related to the value of its assets and an accounting of the funding agreement and any other revenue streams it received in connection with the divisional merger.

9. *Please describe in detail all actions taken to provide notice of Tehum's bankruptcy filing to known and potential creditors.*

It is our understanding that Tehum provided the required notices to all its creditors and parties in interest pursuant to the procedures prescribed by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. This includes mailing and publication notices of the claims bar date, proof claim forms, notice of the disclosure statement and amended disclosure statement, and notice of all applicable hearings to date. The Master Service List in Tehum's chapter 11 case is available here: https://www.kccllc.net/tehum/document/noticelist/1

Tehum is the appropriate party to provide additional details regarding all actions taken to provide notice of Tehum's bankruptcy filing to known and potential creditors.

\*\*\*

The information and data included in this response contains sensitive information—including confidential and proprietary information—and YesCare requests that such information be treated accordingly and that it not be released to any third parties. Production of this information and data is not intended to constitute a waiver of the attorney-client, attorney work product, or any other applicable rights or privileges in this or any other forum, and YesCare expressly reserves its rights in this regard.

Please let me know if you have any questions.

**Akin**

November 15, 2023
Page 9

Sincerely,

Raphael A. Prober
Counsel for YesCare

# Exhibit A

# BYLAWS
# OF
# YESCARE CORP.

## ARTICLE I
### OFFICES

**Section 1.01   REGISTERED OFFICE AND AGENT.** The registered office and registered agent of the Corporation shall be as set forth in the Corporation's Certificate of Formation. The registered office or registered agent may be changed by resolution of the Board of Directors, upon making the appropriate filing with the Secretary of State.

**Section 1.02   PRINCIPAL OFFICE.** The principal office of the Corporation shall be located at such place within or without the State of Texas as shall be fixed from time to time by the Board of Directors.

**Section 1.03   OTHER OFFICES.** The Corporation may also have other offices at any places, within or without the State of Texas, as the Board of Directors may designate, or as the business of the Corporation may require or as may be desirable.

**Section 1.04   BOOKS AND RECORDS.** All records maintained by the Corporation in the regular course of its business, including its share transfer ledger, books of account, and minute books, may be maintained in written paper form or another form capable of being converted to written paper form within a reasonable time. The Corporation shall convert any records so kept upon the request of any person entitled to inspect the records pursuant to applicable law.

## ARTICLE II
### SHAREHOLDERS

**Section 2.01   PLACE OF MEETING.** All meetings of the shareholders shall be held either at the principal office of the Corporation or at any other place, either within or without the State of Texas, as shall be designated in the notice of the meeting or duly executed waiver of notice. The meeting may be held solely by means of remote communication as set out in Section 2.02 below.

**Section 2.02   MEETINGS OF SHAREHOLDERS BY REMOTE COMMUNICATION.** Subject to any guidelines and procedures adopted by the Board of Directors, shareholders not physically present at a shareholders' meeting may participate in the meeting by means of remote communication and may be considered present in person and may vote at the meeting, whether held at a designated place or solely by means of remote communication, subject to the conditions imposed by applicable law.

**Section 2.03   ANNUAL MEETING.** An annual meeting of shareholders shall be held on the date and time set by the Board of Directors and stated in the notice of the meeting for the

purpose of electing directors and transacting any other business as may be brought properly before the meeting.

Failure to hold the annual meeting at the designated time does not result in the winding up or termination of the Corporation. If the Board of Directors fails to call the annual meeting, any shareholder may make written demand to any officer of the Corporation that an annual meeting be held.

**Section 2.04   SPECIAL SHAREHOLDERS' MEETINGS.** Special meetings of the shareholders may be called by the President, the Board of Directors, or by the holders of at least ten percent (10%) of all the shares entitled to vote at the proposed special meeting. The record date for determining shareholders entitled to call a special meeting is the date the first shareholder signs the notice of that meeting. Only business within the purpose or purposes described in the notice or executed waiver of notice may be conducted at a special meeting of the shareholders.

**Section 2.05   QUORUM OF SHAREHOLDERS.** The presence in person or by proxy of the holders of a majority of the shares entitled to vote constitutes a quorum for a meeting of the shareholders. Unless otherwise required by the Texas Business Organizations Code, the Certificate of Formation, or these Bylaws:

(a)     The affirmative vote of the holders of a majority of the shares represented at a meeting at which a quorum is present shall be the act of the shareholders.

(b)     The shareholders represented in person or by proxy at a meeting at which a quorum is present may conduct any business properly brought before the meeting until adjournment, and the subsequent withdrawal from the meeting of any shareholder or the refusal of any shareholder represented in person or by proxy to vote shall not affect the presence of a quorum at the meeting.

If a quorum is not present, the shareholders represented in person or by proxy may adjourn the meeting until a time and place determined by a vote of the holders of a majority of the shares represented in person or by proxy at that meeting. At such adjourned meeting at which the required number of voting shares shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed.

**Section 2.06   CONDUCT OF MEETINGS.** The Board of Directors may adopt by resolution rules and regulations for the conduct of meetings of the shareholders as it shall deem appropriate. At every meeting of the shareholders, the President, or in his or her absence or inability to act, the Vice President, or, in his or her absence or inability to act, a director or officer designated by the Board of Directors, shall act as chairman of, and preside at, the meeting. The Secretary or, in his or her absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting, shall act as secretary of the meeting and keep the minutes thereof.

**Section 2.07   VOTING OF SHARES.** Each outstanding share, regardless of class or series, shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders, except to the extent that the Certificate of Formation provides for more or less than one vote per share or limits or denies voting rights to the holders of the shares of any class or series. Unless

otherwise required by the Texas Business Organizations Code, the Certificate of Formation, or these Bylaws, any matter, other than the election of directors, brought before any meeting of shareholders at which a quorum is present shall be decided by the affirmative vote of the holders of the majority of shares present in person or represented by proxy at the meeting and entitled to vote on the matter.

Unless otherwise required by the Certificate of Formation, the election of directors shall be decided by a plurality of the votes cast by the holders of shares entitled to vote in the election at a meeting of the shareholders at which a quorum is present.

Shareholders are prohibited from cumulating their votes in any election of directors of the Corporation.

Any vote may be taken by voice or show of hands unless a shareholder entitled to vote, either in person or by proxy, objects, in which case written ballots shall be used.

**Section 2.08   WRITTEN   CONSENT   OF   SHAREHOLDERS   WITHOUT   A MEETING.** Any action required by the Texas Business Organizations Code to be taken at any annual or special meeting of shareholders, or any action which may be taken at any annual or special meeting of shareholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall have been signed by the holder or holders of shares having not less than the minimum number of votes that would be necessary to take the action at a meeting at which holders of all shares entitled to vote on the action were present and voted. Prompt notice of the taking of any action by shareholders without a meeting by less than unanimous written consent shall be given to those shareholders who did not consent in writing to the action.

## ARTICLE III
## DIRECTORS

**Section 3.01   BOARD OF DIRECTORS.** The business and affairs of the Corporation shall be managed under the direction of the Board of Directors of the Corporation. Directors need not be residents of the State of Texas or shareholders of the Corporation.

**Section 3.02   NUMBER OF DIRECTORS.** The number of directors shall be one (1), provided that the number may be increased or decreased from time to time by an amendment to these Bylaws or by resolution adopted by the Board of Directors. No decrease in the number of Directors shall have the effect of shortening the term of any incumbent director.

**Section 3.03   TERM OF OFFICE.** At the first annual meeting of shareholders and at each annual meeting thereafter, the holders of shares entitled to vote in the election of directors shall elect directors, each of whom shall hold office until a successor is duly elected and qualified or until the director's earlier death, resignation, disqualification, or removal.

**Section 3.04   VACANCIES   AND   NEWLY   CREATED   DIRECTORSHIPS.** Any vacancy occurring in the Board of Directors may be filled by election at an annual or special meeting of shareholders called for that purpose, or may be filled by the affirmative vote of a

majority of the remaining directors even when the majority of the remaining directors is less than a quorum of the total number of directors specified in the Certificate of Formation or the Bylaws. A director elected to fill a vacancy shall be elected for the unexpired term of his or her predecessor in office.

A directorship to be filled by reason of an increase in the number of directors may be filled by election at an annual or special meeting of shareholders called for that purpose, or may be filled by the Board of Directors for a term of office continuing only until the next election of one or more directors by the shareholders; provided that the Board of Directors may not fill more than two (2) directorships during the period between any two (2) successive annual meetings of shareholders.

**Section 3.05   REMOVAL.** Any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of the director or directors, at any meeting of shareholders called expressly for that purpose.

**Section 3.06   RESIGNATION.** A director may resign by providing written notice to the Corporation. The resignation shall be effective upon the later of the date of receipt of the notice of resignation or the effective date specified in the notice. Acceptance of the resignation shall not be required to make the resignation effective.

**Section 3.07   REGULAR MEETINGS OF DIRECTORS.** A regular meeting of the newly-elected Board of Directors shall be held without other notice immediately following each annual meeting of shareholders, at which the board shall elect officers and transact any other business as shall come before the meeting. The board may designate a time and place for additional regular meetings, by resolution, without notice other than the resolution.

**Section 3.08   SPECIAL MEETINGS OF DIRECTORS.** The Chairman may call a special meeting of the Board of Directors at a time or place determined by the Chairman. The Chairman shall call a special meeting at the written request of two (2) or more directors.

**Section 3.09   NOTICE OF DIRECTORS' MEETINGS.** All special meetings of the Board of Directors shall be held upon not less than three (3) days' written notice stating the date, place, hour, and purpose of the meeting delivered to each director either personally or by mail. Notice of a regular or special meeting of the Board of Directors may be provided to a director by electronic transmission on consent of the director. The director may specify the form of electronic transmission to be used to communicate notice.

A written waiver of the required notice signed by a director entitled to the notice, before or after the meeting, is the equivalent of giving notice to the director who signs the waiver. A director's attendance at any meeting shall constitute a waiver of notice of the meeting, except where the directors attends a meeting for the express purpose of objecting to the transaction of any business on the grounds that the meeting is not lawfully called or convened.

**Section 3.10   QUORUM AND ACTION BY DIRECTORS.** A majority of the number of directors shall constitute a quorum for the transaction of business. The act of the majority of the directors present at a meeting at which a quorum is present at the time of the act shall be the act of the Board of Directors, unless the act of a greater number is required by law, the Certificate of

Formation, or these Bylaws. The directors at a meeting for which a quorum is not present may adjourn the meeting until a time and place as may be determined by a vote of the directors present at that meeting.

**Section 3.11   COMPENSATION.** Directors, as such, shall not receive any stated salary for their services, but by resolution of the Board of Directors a fixed sum and expenses of attendance, if any, may be allowed for attendance at any meeting of the Board of Directors or committee thereof. A director shall not be precluded from serving the Corporation in any other capacity and receiving compensation for services in that capacity.

**Section 3.12   ACTION BY DIRECTORS WITHOUT A MEETING.** Unless otherwise restricted by the Certificate of Formation or these Bylaws, any action required or permitted to be taken at a meeting of the Board of Directors or any committee may be taken without a meeting if all members of the Board of Directors or committee consent in writing or by electronic transmission and the writings or electronic transmissions are filed with the minutes of the proceedings of the Board of Directors.

**ARTICLE IV**
**OFFICERS**

**Section 4.01   POSITIONS AND ELECTION.** The officers of the Corporation shall be elected by the Board of Directors and shall be a President and a Secretary and any other officers, including assistant officers and agents, as may be deemed necessary by the Board of Directors. Any two (2) or more offices may be held by the same person.

Each officer shall serve until a successor is elected and qualified or until the earlier death, resignation, or removal of that officer. Vacancies or new offices shall be filled at the next regular or special meeting of the Board of Directors.

**Section 4.02   REMOVAL.** Any officer elected or appointed by the Board of Directors may be removed with or without cause by the affirmative vote of the majority of the Board of Directors. Removal shall be without prejudice to the contract rights, if any, of the officer so removed.

**Section 4.03   POWERS AND DUTIES OF OFFICERS.** The powers and duties of the officers of the Corporation shall be as provided from time to time by resolution of the Board of Directors or by direction of an officer authorized by the Board of Directors to prescribe the duties of other officers. In the absence of such resolution, the respective officers shall have the powers and shall discharge the duties customarily and usually held and performed by like officers of corporations similar in organization and business purposes to the Corporation, subject to the control of the Board of Directors.

**Section 4.04   AUTHORITY TO EXECUTE AGREEMENTS.** All agreements of the Corporation shall be executed on behalf of the Corporation by (a) the President or any Vice President, (b) such other officer or employee of the Corporation authorized in writing by the President, with such limitations or restrictions on such authority as the President deems appropriate or (c) such other person as may be authorized by the Board of Directors.

## ARTICLE V
## SHARE CERTIFICATES AND TRANSFER

### Section 5.01   CERTIFICATES REPRESENTING SHARES NOT REQUIRED.

The Corporation shall not be required to deliver certificates representing all shares to which shareholders are entitled, and any uncertificated shares may be evidenced by a book-entry system maintained by the registrar of the shares.

The Corporation shall, after the issuance or transfer of uncertificated shares, send to the registered owner of uncertificated shares a written notice containing the information required to be set forth or stated on certificates pursuant to the Texas Business Organizations Code. Except as otherwise expressly provided by law, the rights and obligations of the holders of uncertificated shares and the rights and obligations of the holders of certificates representing shares of the same class and series shall be identical. No share shall be issued until the consideration therefor, fixed as provided by law, has been fully paid.

**Section 5.02   TRANSFERS OF SHARES.** Shares of the Corporation shall be transferable in the manner prescribed by law and in these Bylaws. Transfers of shares shall be made on the books of the Corporation only by the holder of record thereof or by such other person as may under law be authorized to endorse such shares for transfer or by such shareholder's attorney lawfully constituted in writing. No transfer of shares shall be valid as against the Corporation for any purpose until it shall have been entered in the share transfer records of the Corporation by an entry showing from and to what person those shares were transferred.

**Section 5.03   REGISTERED SHAREHOLDERS.** The Corporation shall be entitled to treat the holder of record of any shares issued by the Corporation as the holder in fact thereof for all purposes, including voting those shares, receiving dividends or distributions thereon or notices in respect thereof, transferring those shares, exercising rights of dissent with respect to those shares, exercising or waiving any preemptive right with respect to those shares, entering into agreements with respect to those shares in accordance with Texas law, or giving proxies with respect to those shares.

Neither the Corporation nor any of its officers, directors, employees, or agents shall be liable for regarding that person as the owner of those shares at that time for those purposes, regardless of whether that person possesses a certificate for those shares, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice of such claim or interest, except as otherwise provided by Texas law.

## ARTICLE VI
## INDEMNIFICATION

**Section 6.01   INDEMNIFICATION OF EXISTING AND FORMER DIRECTORS AND OFFICERS.** The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action or other proceeding (whether civil, criminal, administrative, arbitrative, or investigative), including any appeal thereof,

or any inquiry or investigation that could lead to such an action or proceeding (any of the foregoing to be referred to hereafter as a **"proceeding"**) by reason of the fact that the person (1) is or was a director or officer of the Corporation; or (2) while a director of the Corporation, is or was serving at the request of the Corporation as a partner, director, officer, venturer, proprietor, trustee, employee, administrator, or agent of another entity, organization, or an employee benefit plan (each such person in (2) to be referred to hereafter as a **"delegate"** and, together with each such person in (1), a **"covered person"**) to the fullest extent permitted by the Texas Business Organizations Code (as the same now exists or may hereafter be amended, substituted, or replaced, the **"BOC"**), but, if the BOC is amended, substituted, or replaced, only to the extent that such amendment, substitution, or replacement permits the Corporation to provide broader indemnification rights than the BOC permitted the Corporation to provide prior to such amendment, substitution, or replacement, against all judgments (including arbitration awards), court costs, penalties, settlements, fines, excise, and other similar taxes and reasonable attorneys' fees (all of the foregoing to be referred to hereafter as **"expenses"**) actually incurred by the covered person in connection with such proceeding. The right to indemnification in this Section 6.01 shall continue as to a covered person who has ceased to be a director, officer, or delegate and shall inure to his or her heirs, executors, or administrators.

**Section 6.02 ADVANCEMENT OF EXPENSES.** The Corporation shall pay or reimburse reasonable expenses incurred by a covered person currently serving as a director, officer, or delegate of the Corporation who was or is a party or is threatened to be made a party to any proceeding in advance of the final disposition of the proceeding, without any determination as to the covered person's entitlement to indemnification, if the Corporation receives the following before any such advancement of expenses:

(a)  A written affirmation by the covered person of the covered person's good faith belief that he or she has met the standard of conduct necessary for indemnification under the BOC.

(b)  A written undertaking by or on behalf of the covered person to repay the amount so advanced if the final determination is that the covered person has not met the required standard of conduct set forth in the BOC or that indemnification is prohibited by the BOC.

**Section 6.03 INDEMNIFICATION OF AND ADVANCEMENT OF EXPENSES TO OTHER PERSONS.** Notwithstanding any other provision of this ARTICLE VI, the Corporation may indemnify and advance expenses to persons other than covered persons, including advisory directors, non-executive officers, employees, and agents of the Corporation, to the extent and in the manner provided by the BOC and these Bylaws.

**Section 6.04 INDEMNIFICATION RIGHTS NOT EXCLUSIVE.** The rights provided pursuant to this ARTICLE VI shall not be exclusive of any other rights to which a person may be entitled by applicable law, the Corporation's Certificate of Formation, action or resolution of the Corporation's shareholders or disinterested directors, or contract.

**Section 6.05 INSURANCE.** The Corporation may purchase and maintain insurance or another arrangement to indemnify any covered person against any liability asserted against and

incurred by the covered person in that capacity or arising out of the covered person's status in that capacity, regardless of whether the Corporation would have the power to indemnify the covered person against that liability under applicable law.

**Section 6.06   REPORTS OF INDEMNIFICATION AND ADVANCES.** No later than one (1) year from the date that the Corporation indemnifies or advances expenses to a director, it shall give a written report of such indemnification or advancement to the shareholders, which report must be made with or before the notice or waiver of notice of the next shareholders' meeting or the next submission to the shareholders of a written consent without a meeting.

## ARTICLE VII
## MISCELLANEOUS

**Section 7.01   SEAL.** The Corporation may adopt a corporate seal in a form approved by the Board of Directors. The Corporation shall not be required to use the corporate seal and the lack of the corporate seal shall not affect an otherwise valid contract or other instrument executed by the Corporation.

**Section 7.02   CHECKS, DRAFTS, ETC.** All checks, drafts, or other instruments for payment of money or notes of the Corporation shall be signed by an officer or officers or any other person or persons as shall be determined from time to time by resolution of the Board of Directors.

**Section 7.03   FISCAL YEAR.** The fiscal year of the Corporation shall be as determined by the Board of Directors.

**Section 7.04   INVALID PROVISIONS.** If any one or more of the provisions of these Bylaws, or the applicability of any provision to a specific situation, shall be held invalid or unenforceable, the provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of these Bylaws and all other applications of any provision shall not be affected thereby.

**Section 7.05   CONFLICT WITH APPLICABLE LAW OR CERTIFICATE OF FORMATION.** These Bylaws are adopted subject to any applicable law and the Certificate of Formation. Whenever these Bylaws may conflict with any applicable law or the Certificate of Formation, such conflict shall be resolved in favor of such law or the Certificate of Formation.

## ARTICLE VIII
## AMENDMENT OF BYLAWS

**Section 8.01   AMENDMENT OF BYLAWS.** The Board of Directors may amend, alter, change, and repeal these Bylaws or adopt new bylaws. The shareholders may make additional bylaws and may alter and repeal any bylaws whether such bylaws were originally adopted by them or otherwise.