## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: )<br><br>TEHUM CARE SERVICES, INC.[1] )<br><br>Debtor. ) )<br><br>_____ )<br><br>MATTHEW J. DUNDON, solely in his capacity as)<br>the GUC TRUSTEE of the GUC TRUST, )<br>MICHAEL ZIMMERMAN, solely in his capacity )<br>as the PI/WD TRUSTEE of the PI/WD TRUST, )<br>and THE POST-EFFECTIVE DATE DEBTOR, )<br><br>Plaintiffs, )<br><br>v. )<br><br>YITZCHAK LEFKOWITZ a/k/a ISAAC )<br>LEFKOWITZ, YESCARE CORP., CHS TX, )<br>INC., GENEVA CONSULTING, LLC, )<br>PERIGROVE 1018, LLC, PERIGROVE, LLC, )<br>M2 HOLDCO, LLC, M2 LOANCO, LLC, )<br>PHARMACORR LLC, SARA ANN )<br>TIRSCHWELL, AYODEJI OLAWALE )<br>LADELE, BEVERLY MICHELLE RICE, )<br>JEFFREY SCOTT KING, JENNIFER LYNNE )<br>FINGER, and FRANK JEFFREY SHOLEY, )<br><br>Defendants. )<br> ) | Chapter 11<br><br>Case No. 23-90086 (CML)<br><br>Adv. Pro. No. 26-03138 (CML) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS
## JENNIFER LYNNE FINGER, JEFFREY SCOTT KING, BEVERLY
## MICHELLE RICE, AND FRANK JEFFREY SHOLEY'S MOTION(I) TO
## DISMISS PLAINTIFFS' COUNTS III, VII, IX, X, AND XVI FOR FAILURE TO STATE
## A CLAIM OR, IN THE ALTERNATIVE, (II) FOR A MORE DEFINITE STATEMENT

---

[1]   The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

Plaintiffs Matthew J. Dundon, solely in his capacity as GUC Trustee[2] of the GUC Trust, Michael Zimmerman, solely in his capacity as PI/WD Trustee of the PI/WD Trust, and the Post-Effective Date Debtor (collectively, the "Plaintiffs"), by and through their undersigned counsel, file this opposition (the "Opposition") to *Defendants Jennifer Lynne Finger, Jeffrey Scott King, Beverly Michelle Rice, and Frank Jeffrey Sholey's Motion (I) To Dismiss Plaintiffs' Counts III, VII, IX, X, and XVI for Failure to State a Claim or, in The Alternative, (II) for a More Definite Statement* (Adv. Dkt. No. 29) (the "Motion") filed by Defendants Jeffrey Scott King ("Mr. King"), Beverley Michelle Rice ("Ms. Rice"), Jennifer Lynne Finger ("Ms. Finger"), and Frank Jeffrey Sholey ("Mr. Sholey") (collectively, the "Moving Defendants"). In support of this Opposition, the Plaintiffs respectfully state as follows.

## **INTRODUCTION**

1. The Moving Defendants know exactly what they are accused of having done. The Motion is premised on a mischaracterization of the allegations set forth in the Plaintiffs' 83-page complaint (the "Complaint"), which asserts sixteen (16) causes of action against eight (8) corporate entities, seven (7) corporate executives, and fifty unidentified Does. *See* Adv. Dkt. No. 1.

2. In the Complaint, the Plaintiffs expressly define the term "Corizon Management" to include each of the Moving Defendants—four of the seven corporate executive defendants—and allege that these individuals acted collectively and breached their fiduciary duties to Corizon. Compl. at p. 2. ***Even Isaac Lefkowitz*** ("Mr. Lefkowitz") has answered the Complaint's fiduciary duty claims (*see* Adv. Dkt. No. 30), including the factual allegations that use the term "Corizon Management," which shows that such claims can be answered and have been sufficiently pled.

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Complaint filed in the above-captioned adversary proceeding at Docket No. 1 and the *First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Bankr. Dkt. No. 2014 at Ex. B) (the "Plan").

3.	Notwithstanding the fact that the Moving Defendants have notice of the allegations and claims asserted against them, they have moved to dismiss, asserting that the Complaint does not provide them with "fair notice" of the Plaintiffs' claims for breach of fiduciary duty.

4.	This is the central argument advanced by the Moving Defendants for the dismissal of Count VII (Breach of Fiduciary Duty—Misappropriation of Business Opportunities), Count IX (Breach of Fiduciary Duty), and Count X (Breach of Fiduciary Duty—Red Flags).

5.	Mr. King also seeks the dismissal of Count III (Aiding and Abetting Fraudulent Transfer), ignoring the fact that Texas appellate courts have recognized a cause of action of conspiracy to commit a fraudulent transfer.  Finally, the Moving Defendants ask this Court to dismiss Count XVI (Attorney's Fees and Costs) even though Count XVI of the Complaint seeks attorney's fees and costs to the extent allowed under applicable law.  For the reasons stated herein, the Motion should be denied, and discovery in this adversary proceeding should commence.

**BACKGROUND**

6.	As detailed in the Complaint, Corizon Management engaged in misconduct in the months preceding the Petition Date.  The Debtor, formerly known as Corizon Health, Inc. ("Corizon"), was a nationwide provider of correctional healthcare, serving multiple states.  Compl. at ¶ 42.  For most of its history, until the mid-2010s, Corizon's business was financially successful. *Id.* at ¶ 43.  Near the end of the decade, however, Corizon began to witness the loss of key contracts and mounting liabilities, largely driven by claims asserted by incarcerated individuals alleging mistreatment or inadequate healthcare. *Id.*

7.	Mr. Lefkowitz, through an entity known as Perigrove 1018, acquired Corizon in December 2021. *Id.* at ¶¶ 45-46.  After over $30 million was siphoned off through various insider transactions, Corizon Management orchestrated the Divisional Merger and certain related

transactions designed to hinder, delay, and defraud Corizon's creditors. *Id.* at ¶¶ 49-60. This was accomplished by transferring Corizon's ongoing business operations and future business opportunities to YesCare Corp. ("YesCare") and its newly formed subsidiaries. *Id.* at ¶¶ 91-138. This was done to enrich equity holders and management at Corizon's expense. *Id.*

8.      **Mr. Lefkowitz did not act alone**.  Public records and documents produced in response to discovery requests served in the Chapter 11 Case show that Sara Tirschwell ("Ms. Tirschwell"), Corizon's Chief Executive Officer, and Mr. King, Corizon's Chief Legal Officer, played key roles and were extensively involved. *Id.* at ¶¶ 124-134.

9.      Ms. Tirschwell and Mr. King, *inter alia*, signed corporate filings necessary to effectuate the formation of YesCare and its subsidiaries and the Divisional Merger. *Id.* Ms. Tirschwell's and Mr. King's involvement was evidenced from public records. Internal records also reflect Corizon Management's involvement in the diversion of corporate opportunities away from Corizon to the newly formed YesCare and its subsidiaries. *Id.* at ¶¶ 151-154.

10.     **Mr. Lefkowitz rewarded these individuals for their efforts**.  After the 2022 Divisional Merger, (a) Ms. Tirschwell became YesCare's Chief Executive Officer, (b) Mr. King became YesCare's Executive Vice President and Chief Legal Officer, (c) Ayodeji Olawale Ladele ("Mr. Ladele"), Corizon's former Executive Vice President and Chief Medical Officer, became YesCare's Executive Vice President and Chief Medical Officer, (d) Ms. Rice, Corizon's former Corporate Controller, became YesCare's Corporate Controller, (e) Ms. Finger, Corizon's former Assistant General Counsel, became YesCare's Assistant General Counsel, and (f) Mr. Sholey, Corizon's former Chief Financial Officer, became YesCare's Chief Financial Officer, and later assumed the role of YesCare's Chief Executive Officer in February of 2023. *Id.* at ¶ 148. These

4

individuals formed the core management team that implemented the fraud and, as Corizon officers, breached their fiduciary duties.

11.     **For purposes of convenience**, and to avoid unnecessary repetition, the Complaint defines the term "Corizon Management" as including seven specific individuals:  Mr. Lefkowitz, Ms. Tirschwell, Mr. King, Mr. Ladele, Ms. Rice, Ms. Finger, and Mr. Sholey.  Compl. at p. 2.

12.     The Complaint uses the term "Corizon Management" when referring to actions or inactions undertaken by each of these individuals that support the causes of actions asserted against them, including the "Fiduciary Duty Claims" set forth in Count VII (Breach of Fiduciary Duty—Misappropriation of Business Opportunities), Count IX (Breach of Fiduciary Duty), and Count X (Breach of Fiduciary Duty—Red Flags).

13.     Each use of the term "Corizon Management" could be replaced with a duplicative paragraph for each of Mr. Lefkowitz, Ms. Tirschwell, Mr. King, Mr. Ladele, Ms. Rice, Ms. Finger, and Mr. Sholey.  Doing so would have added unnecessary length to the 83-page Complaint. Further, since these defendants acted in concert or collectively, the Plaintiffs use the collective term "Corizon Management" to describe the particularized actions or inactions taken by this group.

14.     **Count VII (Misappropriation of Business Opportunities)**.  The Complaint asserts that "Corizon Management" formed YesCare when they owed a fiduciary duty to Corizon. Compl. at ¶ 293.  YesCare's receipt of Corizon's operating assets came because of the Divisional Merger, which the Complaint alleges each Moving Defendant had a part in orchestrating.  *Id.* at ¶¶ 37-40, 335.  Similarly, the existence of the Moving Defendants' fiduciary duty to Corizon is established by their respective managerial roles within Corizon.  *Id.* at ¶¶ 37-40, 335.  The Complaint asserts that each member of "Corizon Management" became officers or directors of

YesCare.  *Id.* at ¶ 294.  The Moving Defendants' individual roles within Corizon and YesCare are clearly set forth in the Complaint.  *Id.* at ¶¶ 37-40, 335.

15.     The Complaint asserts that "Corizon Management" elected not to respond to RFPs involving new business opportunities on Corizon's behalf but did so instead on behalf of YesCare and its newly created entities.  *Id.* at ¶ 295.  This was a collective act and something that Corizon Management did together as a group.  *Id.*  The Complaint asserts that Corizon was injured by "Corizon Management's" failure to respond to RFPs on Corizon's behalf.  *Id.* at ¶ 297.  "Corizon Management diverted and exploited for their own benefit business opportunities that should have been deemed assets of the Debtor."  *Id.* at ¶ 295.

16.     The Complaint asserts that the Plaintiffs are entitled to punitive damages for "Corizon Management's" depriving creditors of potential courses of payment, a factual assertion applicable to each of the Moving Defendants.  *Id.* at ¶ 298.  The Complaint asserts that Plaintiffs are entitled to recover against "Corizon Management," a factual assertion which applies to each of the Moving Defendants.  *See id.* at ¶ 299.

17.     **Count IX (Breach of Fiduciary Duty)**.  The Complaint asserts that Corizon Management breached their fiduciary duties of care, loyalty, and good faith, and provides a list of *17 misdeeds*, each of which is a breach of such fiduciary duties.  *Id.* at ¶ 308.

18.     No single assertion describes an act which could only be completed by one defendant.  Furthermore, the Complaint's language specifically acknowledges the plural possessive of "their fiduciary duties," contemplating the fiduciary duties owed by each of the members of "Corizon Management," including the Moving Defendants.  *Id.*

19.     The Complaint asserts that "Corizon Management" failed to keep themselves informed.  *Id.* at ¶ 309.  The failure of knowledge is attributable to each of the Moving Defendants,

and the Complaint specifically acknowledges the plural possessive of Corizon Management's failure to "inform themselves." *Id.* at ¶ 308. The Complaint asserts that "Corizon Management" failed to exercise reasonable business judgment. *Id.* at ¶ 310. This failure is also attributable to each of the Moving Defendants. *Id.* The Complaint asserts that Plaintiffs are entitled to recover against "Corizon Management," an assertion applicable to each of the Moving Defendants. *Id.* at ¶ 311.

20. **Count X (Breach of Fiduciary Duty—Red Flags)**. The Complaint again asserts that "Corizon Management" owed fiduciary duties of care, loyalty, and good faith to Corizon. *Id.* at ¶ 313. The Complaint asserts that Corizon Management breached their fiduciary duties of care, loyalty, and good faith, and acted with gross negligence and recklessness, and provides a list of *6 misdeeds*, each of which is a breach of such fiduciary duties. *Id.* at ¶ 314. As with Paragraph 308 of the Complaint, no single assertion describes an act which could only be completed by one defendant. The Complaint again contemplates "Corizon Management's" consistent failure to inform themselves to the degree necessary to satisfy their duties. *Id.* at ¶ 315. As above, this failure of knowledge is attributable to each of the Moving Defendants. *Id.*

21. The Complaint asserts that "Corizon Management" consistently failed to exercise reasonable business judgment. *Id.* at ¶ 316. This omission is attributable to each of the Moving Defendants. The Complaint asserts that Plaintiffs are entitled to recover against "Corizon Management," a factual assertion which applies to each of the Moving Defendants. *Id.* at ¶ 317.

22. To further illustrate the extensive involvement of each of the Moving Defendants, the Complaint also includes specific allegations as to these defendants.

23. **Mr. King**. The Complaint highlights Mr. King's extensive involvement in diverting future contracts from Corizon to YesCare in the Summer of 2022 (before the Divisional

Merger), including a $1 billion contract with the State of Alabama, when he was an officer of and owed fiduciary duties to Corizon. *See* Compl. at ¶¶ 38, 103, 105, 107, 113, 116-17 & 122.

24.     The Complaint highlights Mr. King's extensive involvement in the Divisional Merger, which transferred Corizon's operating assets to YesCare and its newly formed subsidiary CHS TX, when he was an officer of and owed fiduciary duties to Corizon. *Id.* at ¶¶ 125, 126, 127, 129 & 261-65. Mr. King was among the Corizon executives rewarded with a position at YesCare after the Divisional Merger. *Id.* at ¶¶ 148, 201 & 335. While discovery has yet to commence in this proceeding, internal records suggest that Mr. King was one of Mr. Lefkowitz's primary lieutenants.

25.     **Mr. Sholey**. For Mr. Sholey, the CFO of Corizon and current CEO of YesCare, the Complaint highlights Mr. Sholey's extensive involvement in diverting future contracts from Corizon to YesCare in the Summer of 2022 (before the Divisional Merger) when he was an officer of and owed fiduciary duties to Corizon. *See* Compl. at ¶¶ 40, 51, 103 & 107.

26.     Mr. Sholey was part of the core management team that helped frame responses to RFPs, including the proposal for the Arizona Department of Corrections. *Id.* at ¶ 107. While discovery has yet to commence in this adversary proceeding, internal records suggest that Mr. Sholey, Corizon's CFO, was personally involved with the falsification of bank statements provided to FTI. *Id.* at ¶ 146. Mr. Sholey was among the executives rewarded with a position at YesCare after the Divisional Merger. *Id.* at ¶¶ 129, 148, 200-01 & 335. Mr. Sholey assumed the role of YesCare's Chief Executive Officer in February of 2023. *Id.* at ¶ 148. Internal records suggest that Mr. Sholey was also one of Mr. Lefkowitz's primary lieutenants.

27.     **Ms. Finger**. Ms. Finger was among the executives who orchestrated the Divisional Merger. Compl. at ¶ 39. Ms. Finger was among the executives rewarded with a position at

YesCare after the Divisional Merger. *Id.* at ¶¶ 39, 103, 148 & 335. Ms. Finger, the former Assistant General Counsel at Corizon, became the Assistant General Counsel at YesCare. *Id.*

28. **Ms. Rice**. Ms. Rice was among the executives who orchestrated the Divisional Merger. Compl. at ¶ 37. Ms. Rice was among the executives rewarded with a position at YesCare after the Divisional Merger. *Id.* at ¶¶ 37, 148 & 335. Ms. Rice, the former Corporate Controller at Corizon, became the Corporate Controller at YesCare. *Id*.

29. The full extent of the involvement of the Moving Defendants may not become fully known until the completion of discovery in this adversary proceeding. The 83-page Complaint describes the particularized actions or inactions taken by the Moving Defendants that support the assertion of the causes of action in Count VII (Breach of Fiduciary Duty—Misappropriation of Business Opportunities), Count IX (Breach of Fiduciary Duty), Count X (Breach of Fiduciary Duty—Red Flags), and, for Mr. King, Count III (Aiding and Abetting Fraudulent Transfer).

30. **Disclosure Statement**. As set forth in the Court-approved Disclosure Statement, Corizon Management's misconduct gives rise to a host of Estate Causes of Action. *See* Bankr. Dkt. No. 1815-2 at §§ II.D & III.A.9.

31. **Releases**. The Plan afforded Corizon Management with releases, as set forth in Article IV.B.7 (Consensual Claimant Release) and Article IV.B.9 (Estate Causes of Action Release). But these releases do not go into effect unless and until the "Final Payment Date."

32. Corizon Management could not get the benefit of either release unless the settlement payments are made in accordance with the Plan. Under the Plan, the Channeling Injunction is the only injunction that went into effect on the Effective Date, which injunction was designed to serve as a bridge between the Effective Date and the Final Payment Date. The Channeling Injunction offered Corizon Management various protections.

9

33.     **Default**.  But those protections fell away due to the Settlement Parties' failure to honor the terms of the settlement.  *See* Bankr. Dkt. No. 2617.

34.     **Adversary Proceeding**.  On April 27, 2026, the Plaintiffs timely commenced this adversary proceeding.   Central to this lawsuit are the Fiduciary Duty Claims set forth in Counts VII, IX, and X of the Complaint, as well as the fraudulent transfer and related claims set forth in Counts I, II, III, IV, V, VI of the Complaint.  Given the subsequent bankruptcy filing by YesCare and certain of its subsidiaries, the Fiduciary Duty Claims, and any D&O insurance that may be responsive thereto, present a key path to recovery to the Plaintiffs.

35.     **Motion to Dismiss**.  On July 3, 2026, the Moving Defendants filed their Motion seeking the dismissal of Counts III, VII, IX, X, and XVI for failure to state a claim or, in the alternative, for a more definite statement.

36.     Other defendants in this adversary proceeding have filed answers to the Complaint. On June 3, 2026, Defendants M2 HoldCo LLC and M2 LoanCo LLC filed their answer to the Complaint.  *See* Adv. Dkt. No. 10.  On June 4, 2026, Defendants Geneva Consulting LLC, Perigrove, LLC, Perigrove 1018, LLC, and PharmaCorr LLC filed their answer to the Complaint. *See* Adv. Dkt. No. 12.  On July 6, 2026, Mr. Lefkowitz filed his answer to the Complaint.  *See* Adv. Dkt. No. 30.

37.     In the Motion, the Moving Defendants assert that (i) as to Defendant King, Count III of the Complaint ought to be dismissed as an unrecognized claim; (ii) as to the Moving Defendants Counts VII, IX, and X ought to be dismissed for group pleading; (iii) as to the Moving Defendants Count XVI ought to be dismissed as a matter of law; and (iv) in the alternative, if Counts VII, IX, and X are not dismissed, Plaintiffs should be compelled to provide a more definite statement.  Neither dismissal nor a more definite statement are appropriate here.

**ARGUMENT**

38.     The arguments presented by the Moving Defendants should be rejected by this Court and the Motion should be denied.

**A.     The Complaint States a Plausible Claim for
Aiding and Abetting or Conspiracy to Commit Fraud**

39.     The Motion does not challenge the Complaint's factual allegations that Mr. King was instrumental, along with Mr. Lefkowitz and Ms. Tirschwell, in orchestrating the Divisional Merger and effectuating the fraudulent transfer of Corizon's assets to YesCare.

40.     Mr. King was a central actor in the fraud and directly benefited from it through his position as YesCare's Executive Vice President and Chief Legal Officer.

41.     To support his argument that Count III of the Complaint should be dismissed, Mr. King asserts that "[t]here are no allegations in the Complaint that the transfers of Corizon's assets to YesCare were made to or for the benefit of Defendant King."  Motion at ¶ 9.

42.     Mr. King further asserts that Count III of the Complaint fails to state a claim upon which relief can be granted "because neither Texas nor federal law generally recognizes such a claim where the defendant did not receive or benefit from the transfer of property."  *Id.* at ¶ 10.

43.     To support this assertion, Mr. King relies on the Fifth Circuit's ruling in *Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984) ("*Mack*").  *Id.*  Mr. King also asserts that neither Texas law, namely, Texas's Uniform Fraudulent Transfers Act ("TUFTA"), nor the Bankruptcy Code recognizes a cause of action for aiding and abetting a fraudulent transfer.  *Id.* at ¶¶ 10-11.

44.     But these arguments miss the point.  Regardless of whether the Bankruptcy Code and TUFTA expressly provide a cause of action for "aiding and abetting," Mr. King, Mr. Lefkowitz, and Ms. Tirschwell can be held liable for civil conspiracy to commit a fraudulent transfer based on the fact that they actively coordinated the unlawful stripping of assets from

11

Corizon. *See Matter of 3 Star Props., L.L.C.,* 6 F.4th 595, 609 (5th Cir. 2021) (fraudulent transfer claim can serve as the "underlying tort" for a conspiracy claim); *Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 740 (N.D. Tex. 2008) (violation of TUFTA is an "unlawful act" sufficient to support cause of action for "civil conspiracy, aiding and abetting, [and] joint enterprise"); *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 743 (Bankr. S.D. Tex. 2009) ("<u>Northstar</u>") (rejecting defendants' argument that Texas law does not provide for causes of action for conspiracy or aiding and abetting to commit fraudulent transfers and finding that the litigation trust alleged facts plausibly supporting a claim against defendants for conspiring to effect fraudulent transfers); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366 (Tex. App. 2012) (holding that attorneys who were involved in an allegedly fraudulent transaction could be liable for conspiracy to commit a fraudulent transaction under Texas law).

45.     Notably, in *Essex Crane*, the Texas Court of Appeals discussed the Fifth Circuit's decision in *Mack*—the main case on which Mr. King relies—when it held that a party accused of conspiracy to commit a fraudulent transfer could be held liable "as a direct participant in an alleged conspiracy to defraud." *Essex Crane*, 371 S.W.3d at 387.

46.     The Texas Supreme Court has affirmed the long-standing common law rule that corporate agents are personally liable for their own fraudulent or tortious acts even when acting on behalf of the corporation. *See Keyes v. Weller*, 692 S.W.3d 274 (Tex. 2024) (holding that the protections of Texas Business Organizations Code Section 21.223 do not abrogate the common law). A conclusion that Mr. King—along with Mr. Lefkowitz and Ms. Tirschwell—can be held liable for conspiracy to commit a fraudulent transfer based on their direct participation in the fraud is consistent with the holding in *Essex Crane* and Texas law.

47.     The dispute is, therefore, one of nomenclature.  Mr. King objects to the use of the label "aiding and abetting."  But trial courts must "determine the true nature of a pleading by its substance, not its labels." *Armstrong v. Capshaw, Goss & Bowers, LLP,* 404 F.3d 933. 936 (5th Cir. 2005); *see Edwards v. City of Houston,* 78 F.3d 983, 995 (5th Cir. 1996) ("[W]e have oft stated that '[t]he relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co.,* 320 F.2d 594, 606 (5th Cir. 1963)).

48.     This Court can treat Count III of the Complaint as a claim for conspiracy to defraud or conspiracy to commit a fraudulent transfer.  *See In re Ramirez,* 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009) (recharacterizing a "self-titled common law fraud claim" as an aiding and abetting or conspiracy to commit fraudulent transfers claim).  Regardless of how the factual allegations set forth in Court III are characterized, the Plaintiffs have asserted a plausible cause of action.

**B.      The Complaint Provides the Moving Defendants with
         <u>Adequate Notice of the Allegations and Claims Asserted Against Them</u>**

49.     Mr. King, along with the other Moving Defendants, ask this Court to dismiss the "Fiduciary Duty Claims" set forth in Count VII, Count IX, and Count X under Civil Rule 8(a), contending that the Complaint fails to provide them "with fair notice" of the claims asserted against them.  Motion at ¶¶ 13-21.  The Moving Defendants contend that the Plaintiffs' use of the defined term "Corizon Management" constitutes an impermissible group pleading.  *Id.*

50.     But Civil Rule 8 does not prohibit or discourage parties from using defined terms in a complaint to reference multiple defendants in lieu of repeating the same factual allegations for each defendant.  *See Texas v. Rising Eagle Cap. Grp. LLC*, No. 4:20-CV-2021, 2021 WL 10343470, at *2 (S.D. Tex. Sept. 27, 2021) ("Nothing in [Fed. R. Civ. P.] 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are

asserted against each defendant.") (internal quotations omitted); *Gammon v. J.W. Steel & Supply, Inc.*, No. CIV A H-02-0647, 2006 WL 2505631, at *1 (S.D. Tex. Aug. 28, 2006) ("Defendants' primary complaint about the complaint is that Gammon has used 'generic group pleading' in alleging conduct that violates ERISA, without distinguishing which acts were committed by which defendant.  There is no prohibition against group pleading.").

51.     Complaints alleging claims for breach of fiduciary duty often use defined terms to reference multiple defendants.  This makes logical sense.

52.     Corporate actions requiring board approval—*e.g.*, consummating a divisional merger—cannot be taken unless the board members, *as a group*, authorize such actions.  Likewise, breach of fiduciary claims can arise when corporate officers, *as a group*, undertake collective action or inaction.  In these situations, it is proper for a complaint to set forth factual allegations using defined terms that encompass multiple defendants, *i.e.*, group terms, in lieu of repeating the same factual allegations for each defendant.[3]

---

[3]     *See Am. Home Assurance Co., v. Midrex Techs., Inc.*, No. 2:24-CV-182, 2025 WL 4966808, at *3 (S.D. Tex. Mar. 11, 2025) (holding that a complaint which uses group pleading will survive a pleading sufficiency challenge if the defendants "occupied the same position relative to the facts giving rise to the claim, and those facts are clearly spelled out [and] [t]he joint pleading against them does not cross over into the unrelated conduct of other defendants."); *Pedersen v. Kinder Morgan Inc.*, 622 F. Supp. 3d 520, 543 (S.D. Tex. 2022) ("[The] Defendants' group pleading allegations fall flat for three reasons: (1) it is undisputed that the Committee had the sole authority and responsibility for administration of the plan; (2) Defendants' group pleading allegation appear to be a motion for a 'more definite statement,' which Defendants should have filed under Rule 12(e) before the responsive pleading; and (3) Defendants' citation to this Court's ruling in *Del Castillo* is unpersuasive because *Del Castillo* is about 'lumping together ... distinct corporate entities,' … it does not bear on the fiduciary responsibilities of the officers of a single company who are all serve as members of a Fiduciary Committee."); *Clapper v. Am. Realty Inv'r, Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015) ("Plaintiffs contend that, where paragraphs in the amended complaint refer to multiple defendants, they intend to allege that each defendant committed the alleged acts.  Except, for example, where a statute otherwise requires, plaintiffs are permitted under federal procedure to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act."); *Northstar*, 616 B.R. at 723 ("Where more than one defendant allegedly committed the same act together, a complaint is not defective for the reason that it asserts that all defendants committed the same act, without identifying each individual defendant.").

14

53.     The key issue is whether the complaint provides the defendants with fair notice of the claims asserted against them.  The Complaint provides the Moving Defendants with adequate notice of the allegations and claims asserted against them and fully complies with Civil Rule 8.

54.     Courts have rejected the use of group terms when (a) the relevant cause of action includes a scienter element (*e.g.*, causes of action subject to the heightened pleading standards set forth in Civil Rule 9),[4] and (b) when the alleged conduct could only have been undertaken by one defendant.[5]  Courts, however, permit the use of group terms outside of these contexts where, as here, group conduct is alleged.

55.     For example, in *Northstar*, the defendants in a fraudulent transfer action argued that the trustee's complaint violated Civil Rule 8(a) because it lumped the defendants into a group rather than specifying each defendant's individual roles in the fraudulent transfers.  616 B.R. at 723.  This Court rejected this argument.  *Id.*

56.     This Court ruled that "[w]here more than one defendant allegedly committed the same acts together, a complaint is not defective for the reason that it asserts that all defendants committed the same act, without identifying each individual defendant."  *Id.*

57.     Judge Isgur explained that "[a] fraudulent transfer is not an act that 'inherently could have been committed by only *one* defendant."  *Id.*  To the contrary, the trustee's allegations were that "each of the Defendants participated in the transfer alleged."  *Id.*  The trustee in *Northstar* created and used group terms in the complaint "for convenience" and asserted that the Defendants

---

[4]     *See Martinez v. City of North Richland Hills*, 846 Fed. Appx. 238, 243 (5th Cir. Feb. 25, 2021) ("*Martinez*") (affirming that group pleading, on its own, does not warrant dismissal; dismissing based upon the scienter element of deliberate indifference claims); *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) (rejecting group pleading in light of the scienter element of the Private Securities Litigation Reform Act); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) (same).

[5]     *See Wilson v. Deutsche Bank Trust Co.*, No. 13:18-CV-0854-D, 2019, WL 175078, at *7 (N.D. Tex. Jan. 10, 2019) (finding that the Complaint impermissibly grouped defendants where the acts alleged 'inherently could have been committed by only one defendant.'").

all committed the alleged acts. *Id.* Thus, the "Complaint did not violate Federal Rules of [Civil] Procedure 8(a)'s prohibition against group pleadings." *Id.*

58. *Northstar*—a case that the Moving Defendants fail to cite or acknowledge in their Motion—is on point. The Fiduciary Duty Claims do not include a scienter element or involve conduct that inherently could have been committed by only *one* defendant.

59. **Rather, it took a village**. As in *Northstar*, the Plaintiffs' allegations are that *each* of the Moving Defendants participated in the alleged misconduct.

60. As the various executives and officers of both Corizon and YesCare, each use of the term "Corizon Management" within the Complaint refers to the collective and particularized actions or inactions of each of the Moving Defendants, as well as Mr. Lefkowitz, Ms. Tirschwell, and Mr. Ladele, where not otherwise distinguished.[6] As in *Northstar*, the Plaintiffs created and used the group term "Corizon Management" in the Complaint for convenience. And, as in *Northstar*, the Complaint provides the Moving Defendants with fair notice of the claims asserted against them, making it fully compliant with Civil Rule 8(a).

61. In the face of the foregoing case law, the Motion misstates the governing law, relies on distinguishable authority, and ignores the factual allegations set forth in the Complaint.

62. **First**, the Moving Defendants misstate the legal standard. Motion at ¶ 14. The Moving Defendants argue that for "Fed. R. Civ. P. 8(a)" "'Group Pleading' against multiple defendants is insufficient[.]" *Id.* But the case law cited by the Moving Defendants in their Motion

---

[6] *See Westlake Corp. v. Chemcorp 1 LLC*, No. CIV A H-24-99, 2024 WL 3029019, at *5-6 (S.D. Tex. June 17, 2024) (finding that group pleading, does not warrant dismissal and noting that "courts in this Circuit have focused on whether alleged 'shotgun pleading' defects actually muddy the complaint with complicated, irrelevant, extraneous, or confusing facts, or leave the complaint devoid of essential allegations[.]") (cleaned up) (internal quotations omitted).

disagrees with the Moving Defendants' framing of the legal standard.[7]   As noted above, group actions may be pled with group pleading.  *See Northstar*, 616 B.R. at 723.

63.     **Second**, the Moving Defendants rely on case law that is facially inapplicable here. *See* Motion at ¶ 14.  *Childers v. Lifestyles Unlimited Inc.,*[8] raised discrimination, hostile work environment, and retaliation claims, each of which requires individual acts and each of which, as alleged in *Childers*, was devoid of any non-conclusory allegations.[9]

64.     In *Martinez*,[10] the Fifth Circuit distinguishes between permissible and impermissible group pleading, noting that deliberate indifference is a type of claim which requires the pleading of individual acts and cannot be shown through the actions of a cumulative group. Similarly, *Tow v. Bulmahn*,[11] the Court distinguishes the particular failings of the group pleading therein, noting that the trustee failed to "plead a factual basis for the allegations that these

---

[7]     In *Martinez*, cited in the Motion at Paragraph 14, the Fifth Circuit noted that "creating a category of multiple defendants into a clearly defined term does not, of itself, warrant dismissal."  846 Fed. Appx. at 243.  In *Barnett v. American General Life Insurance Co*., cited in the Motion at Paragraph 7, the District Court for the Western District of Texas acknowledges that the use of group pleading is sufficient if it allows the court to find that the defendants "acted in concert or were somehow collectively responsible for each others' actions."  No. A-09-CA-935-SS, 2010 WL 11566353, at *3 (W.D. Tex. Oct. 7, 2010).  And in *Cubas v. St. James Parish School Board*, cited in the Motion at Paragraph 7, the Eastern District of Louisiana reiterated the above-quoted language in *Martinez*, and noted that "because Rule 12(b)(6) motions to dismiss are viewed with disfavor in this Circuit and are rarely granted, the Court will not dismiss Plaintiff's allegations or claims on the basis of her use of group pleading."  No. 20-1322-WBV-KWR, 2021 WL 1212537, at *7 (E.D. La. Mar. 31, 2021).

[8]     No. 3:22-CV-2615-X, 2023 WL 3961702 (N.D. Tex. 2023).  *See* Motion at ¶ 14.

[9]     *Id.* at *3-*6 (The court noted that, regarding the discrimination claim, "Childers does not identify any specific comparators, much less offer any facts to show that she and her comparators were similarly situated or that the Lifestyles Entities treated them differently under nearly identical circumstances;" regarding the hostile work environment claim, "Childers provides only the conclusory and vague assertion that she 'was subjected to unwelcome harassment based on her race, including a hostile work environment,' but she fails to identify even one specific instance of harassment;" and regarding the retaliation claim, "Childers fails to disclose who she complained to about the alleged race discrimination, what she complained about specifically, or any details about the alleged actions taken against her due to her complaint.").

[10]    846 Fed. Appx. at 243.  *See* Motion at ¶14.

[11]    No. 15-3141, 2016 WL 1722246 (E.D. La. Apr. 29, 2016).  *See* Motion at ¶¶ 11 & 14.

defendants share collective responsibility for the challenged decisions." *Id.* at \*17.  Again, this is a case involving group conduct.

65.     **Third**, the Moving Defendants assert that the Complaint "identifies no specific allegations taken" by certain Moving Defendants.  Motion at ¶ 17.

66.     But the Motion overlooks the Complaint's specific factual allegations that support the breach of fiduciary duty claims and that explain how those acts caused injury to Corizon.  The Moving Defendants ignore the individual allegations against them, including the allegations assessed to each Moving Defendant by each use of the term "Corizon Management."

67.     Unlike the "loosely-defined groups" found in *Tow v. Bulmahn*, No. 15-3141 2016, WL 1722246, at \*17 (E.D. La. Apr. 29, 2016), the Complaint utilizes a discrete term to refer to a particular subset of defendants, including the Moving Defendants, which acted commonly, pursuant to their respective managerial roles at Corizon.

68.     Each use of the term "Corizon Management" in the Complaint refers to actions or inactions attributable to each of the Moving Defendants, Mr. Lefkowitz, Ms. Tischwell, and Mr. Ladele.  Count VII details how each of the members of Corizon Management breached their fiduciary duties by electing not to respond to RFPs on behalf of Debtor, exploiting opportunities for their own benefit that should have been deemed assets of the Debtor.  Compl. at ¶ 295.

69.     Count IX details how each of the members of Corizon Management breached their fiduciary duties of care, loyalty, and good faith by, *inter alia*, failing to investigate and inform themselves of the medical malpractice issues plaguing Corizon, failing to act in the face of mounting medical malpractice liabilities, failing to adequately respond to and address longstanding medical malpractice issues, failing to promptly undertake corrective actions, and abdicating their decision-making authority to Mr. Lefkowitz.  Compl. at ¶ 308.

70.     Count X describes the red flags each of the members of Corizon Management ignored, thus breaching their fiduciary duties, including, *inter alia*, failing to timely take action concerning the Signature Accounts, failing to investigate and inform themselves of the medical malpractice issues with Corizon's business including ignoring warnings concerning medical malpractice liabilities, delaying addressing Corizon's medical malpractice problems, and failing to adequately respond to and address longstanding medical malpractice issues.  Compl. at ¶ 314.

71.     Taken together with the individual allegations set forth against each of the Moving Defendants, the allegations against "Corizon Management"—each being attributable to the Moving Defendants—establish sufficient plausible claims supported by non-conclusory factual allegations such that the Court could find that the Moving Defendants each breached their fiduciary duties in the manner described in Counts VII, IX, and X.

## C.     A More Definite Statement Is Not Required

72.     The Moving Defendants argue, in the alternative, that if their request for dismissal is denied, the Plaintiffs should be required to amend the Complaint to provide a more definite statement of the Fiduciary Duty Claims.  Motion at ¶ 26.

73.     But, as the Moving Defendants admit, a motion for a more definite statement is appropriate only if a complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."  *Id.* at ¶ 27.

74.     The authorities cited by the Moving Defendants in Paragraph 28 of their Motion illustrate the sort of severe defects that must be shown for the Court to require a more definite statement.  *See Fareed v. City of Carrollton*, No. 3:24-cv-3251-N, 2025 WL 1707957 at *6 (N.D. Tex. June 17, 2025) (complaint contained "incomplete allegations," "no punctuation and … an incomplete thought," and "contradictory facts," and failed to distinguish distinct discriminatory incidents in two separate cities); *McKarry v. Dow Chem. Co.*, No. CIV A 17-7830, 2019 WL

13221935 at *3 (E.D. La. Apr. 22, 2019) (unopposed motion where injured worker failed to even "briefly explain [the] who, what, when, where, why, and how regarding the defendants' alleged wrongdoings."); *Bitte v. United Cos. Lending Corp.*, No. 06-5648, 2006 WL 3692754 at *1 (E.D. La. Dec. 11, 2006) (*pro se* plaintiff pled rhetoric that defendant "'lied,' [] used 'false pretenses,' [] 'manufactured documents,' [and] effected a false property transfer" without "explain[ing] the factual basis" for the allegations).

75.     Here, the Complaint is not unintelligible like the pleadings in those cases (or anywhere close).  As detailed above, the Complaint contains detailed allegations of the conduct constituting Moving Defendants' breaches of fiduciary duty that are sufficient to identify a plausible claim for breach of fiduciary duty upon which relief could be granted.

76.     The Complaint already pleads the breaches of fiduciary duty at issue as to each specific Moving Defendant and does not warrant a more definite statement.  *See Brown v. Maxxam*, No. CIV A 90-1468, 1991 WL 13918 at *3 (E.D. La. Jan. 28, 1991) (denying motion for more definite statement where plaintiff collectively pled that a group of defendants breached fiduciary duties); *see also In re Giant Gray*, 629 B.R. 814, 855 (Bankr. S.D. Tex. 2020) ("*Giant Gray*") (denying motion for more definite statement as to collective pleading of multi-defendant fraudulent transfer scheme, on the basis that "there are enough facts elsewhere in the complaint to render it plausible that [plaintiff] has a plausible claim against [defendants] upon which relief could be granted.").

77.     The Moving Defendants' recitation and discussion in the Motion of myriad allegations at issue, coupled with the fact that Moving Defendants have knowledge of each of their exact roles in the breaching conduct at issue, further forecloses their contention that the Complaint is fatally unintelligible.  *Babcock & Wilson Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D.

20

632, 633-634 (E.D. La. 2006) ("This motion is further disfavored when 'the particular information defendant is seeking is within defendant's own knowledge, which mitigates in favor of denying the motion.' … Defendants' own motion demonstrates their understanding of the claims asserted and their knowledge of facts underlying those claims.").

78. Indeed, the fact that Mr. Isaac Lefkowitz himself has answered the Complaint's fiduciary duty claims (*see* Adv. Dkt. No. 30), including the factual allegations that use the term "Corizon Management," shows that such claims can be answered. *Brown*, 1991 WL 13918 at *3 ("The ability of the other defendants to answer the plaintiffs' complaint casts considerable doubt on the proposition that the complaint is vague and ambiguous enough to make it unreasonable to require [moving defendant] to file a responsive pleading.").

79. As the Court held in *Giant Gray*, Civil Rule 12(e) "is intended for complaints that are unintelligible, not complaints that merely lack detail" and all that is required for pleading purposes is that "there are enough facts elsewhere in [the] complaint to render it plausible that [plaintiff] has a plausible claim against [defendants] upon which relief could be granted." 629 B.R. 814 at 855. The Complaint and its allegations of the Moving Defendants' breaches of fiduciary duties meet this standard.

80. Any additional information that Moving Defendants desire regarding the claims must be sought through discovery, not a motion for more definite statement. *Id.* at 854 ("[I]f the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied."). For the foregoing reasons, the Motion for a more definite statement under Civil Rule 12(e) should be denied.

### D. Plaintiffs' Fee Claim Should Not Be Dismissed

81. The Moving Defendants argue that Counts III, VII, IX, and X do not support the recovery of attorneys' fees and that the Plaintiffs' claim for attorneys' fees and costs in Count XVI

of the Complaint should be dismissed on this basis.  Motion at ¶¶ 22-25.  But Count XVI of the Complaint simply requests that the Court award reasonable attorneys' fees and costs "[t]o the extent allowed by applicable law."  Compl. at ¶ 354.  Thus, the Plaintiffs are only seeking attorney's fees and costs that are allowed by applicable law.  *Id.*  This Court does not need to determine, at this stage, whether the Plaintiffs are entitled to attorney's fees and costs.

82.	But, even putting this aside, applicable law supports the Plaintiffs' claim for attorney's fees and costs.  The Plaintiffs have properly pled a claim for conspiracy to commit fraudulent transfers, the underlying tort being a TUFTA violation.  *See supra* at ¶¶ 44-46.

83.	As the Moving Defendants admit in their Motion, the TUFTA provides for potential attorney's fee recovery for "'any proceeding under this chapter.'  *See* TEX. BUS. & COMM. CODE § 24.013."  Motion at ¶ 23.  The Moving Defendants fail to provide any authority that this type of claim would not fall within that language.

84.	The Moving Defendants also assert in their Motion that there is an unresolved question of choice of law, specifically whether Texas or Delaware law applies to the Fiduciary Duty Claims.  *See* Motion at ¶ 24, fn. 15.  The Moving Defendants contend that attorney's fees are only recoverable if Delaware law applies and the breach of fiduciary duty involves "an egregious breach of duty of loyalty."  *Id.* (citing *Sorrento Therapeutics, Inc. v. Mack*, 2025 Del. Ch. LEXIS 195, at *36-37 (Del. Ch. July 31, 2025)).  The Moving Defendants do not set forth any analysis of choice of law factors that would allow the Court to determine the applicable law at this stage.

85.	This case involves an egregious breach of the duty of loyalty, including the systematic misappropriation of Corizon's assets and diversion of future business to YesCare to defraud Corizon's creditors.  If Delaware law applies to the Fiduciary Duty Claims, as Corizon was a Delaware corporation before converting to a Texas corporation before the Divisional Merger

(*see* Compl. at ¶ 125), then under the Moving Defendants' own logic, the Court may award the

Plaintiffs' attorney's fees and costs in this proceeding, subject to the evidence presented.

## CONCLUSION

86.     The Complaint provides the Moving Defendants with fair notice of the claims

asserted against them and plausibly alleges each challenged claim.  The Motion should be denied.

Dated:  July 24, 2026                                    Respectfully submitted,

**BROWN RUDNICK LLP**

/s/ *Eric R. Goodman*
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Susan Sieger-Grimm (*pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: egoodman@brownrudnick.com
        cmoxley@brownrudnick.com
        gcicero@brownrudnick.com
        ssiegergrimm@brownrudnick.com

**STINSON LLP**

/s/ *Nicholas Zluticky*
Nicholas Zluticky (SDTX Bar No. 3845893)
Zachary H. Hemenway (SDTX Bar No. 3856801)
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email:  nicholas.zluticky@stinson.com
        zachary.hemenway@stinson.com

*Counsel for the Plaintiffs*

23

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in this proceeding on July 24, 2026.

/s/ Eric R. Goodman
Eric R. Goodman