**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br><br>TEHUM CARE SERVICES, INC.,[1]<br><br>Debtor. | ) | Chapter 11<br><br>Case No. 23-90086 (CML) |
| MATTHEW J. DUNDON, solely in his capacity as the GUC TRUSTEE of the GUC TRUST, MICHAEL ZIMMERMAN, solely in his capacity as the PI/WD TRUSTEE of the PI/WD TRUST, and THE POST-EFFECTIVE DATE DEBTOR,<br><br>Plaintiffs,<br><br>v.<br><br>YITZCHAK LEFKOWITZ a/k/a ISAAC LEFKOWITZ, YESCARE CORP., CHS TX, INC., GENEVA CONSULTING, LLC, PERIGROVE, LLC, PERIGROVE 1018, LLC, M2 HOLDCO, LLC, M2 LOANCO, LLC, PHARMACORR LLC, SARA ANN TIRSCHWELL, AYODEJI OLAWALE LADELE, BEVERLY MICHELLE RICE, JEFFREY SCOTT KING, JENNIFER LYNNE FINGER, and FRANK JEFFREY SHOLEY,<br><br>Defendants. | ) | Adv. Pro. No. 26-03138 (CML) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT AYODEJI OLAWALE LADELE'S MOTION (I) TO DISMISS PLAINTIFFS' COUNTS VII, IX, X, AND XVI FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, (II) FOR A MORE DEFINITE STATEMENT**

[1] The last four digits of the Debtor's federal tax identification number are 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

Plaintiffs Matthew J. Dundon, solely in his capacity as GUC Trustee[2] of the GUC Trust, Michael Zimmerman, solely in his capacity as PI/WD Trustee of the PI/WD Trust, and the Post-Effective Date Debtor (collectively, the "Plaintiffs"), by and through their undersigned counsel, file this opposition (the "Opposition") to *Defendant Ayodeji Olawale Ladele's Motion (I) to Dismiss Plaintiff's Counts VII, IX, X, and XVI for Failure to State a Claim or, in the Alternative, (II) for a More Definite Statement* (Adv. Dkt. No. 34) (the "Motion") filed by Defendant Ayodeji Olawale Ladele ("Dr. Ladele"). In support of this Opposition, the Plaintiffs respectfully state as follows.

## INTRODUCTION

1. Dr. Ladele knows exactly what he is accused of having done. The Motion is premised on a mischaracterization of the allegations set forth in the Plaintiffs' 83-page complaint (the "Complaint"), which asserts sixteen (16) causes of action against eight (8) corporate entities, seven (7) corporate executives, and fifty unidentified Does. *See* Adv. Dkt. No. 1.

2. In the Complaint, the Plaintiffs expressly define the term "Corizon Management" to include Dr. Ladele—as one of seven corporate executive defendants—and allege that these individuals acted collectively and breached their fiduciary duties to Corizon. Compl. at p. 2. ***Even Isaac Lefkowitz*** ("Mr. Lefkowitz") has answered the Complaint's fiduciary duty claims (*see* Adv. Dkt. No. 30), including the factual allegations that use the term "Corizon Management," which shows that such claims can be answered and have been sufficiently pled.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Complaint filed in the above-captioned adversary proceeding at Docket No. 1 and the *First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Bankr. Dkt. No. 2014 at Ex. B) (the "Plan").

3. Notwithstanding the fact that Dr. Ladele has notice of the allegations and claims asserted against him, he has moved to dismiss, asserting that the Complaint does not provide him with "fair notice" of the Plaintiffs' claims for breach of fiduciary duty.

4. This is Dr. Ladele's central argument for the dismissal of Count VII (Breach of Fiduciary Duty—Misappropriation of Business Opportunities), Count IX (Breach of Fiduciary Duty), and Count X (Breach of Fiduciary Duty—Red Flags).

5. Finally, Dr. Ladele asks this Court to dismiss Count XVI (Attorney's Fees and Costs) even though Count XVI of the Complaint seeks attorney's fees and costs to the extent allowable under applicable law. For the reasons stated herein, the Motion should be denied, and discovery in this adversary proceeding should commence.

## BACKGROUND

6. As detailed in the Complaint, Corizon Management engaged in misconduct in the months preceding the Petition Date. The Debtor, formerly known as Corizon Health, Inc. ("Corizon"), was a nationwide provider of correctional healthcare, serving multiple states. Compl. at ¶ 42. For most of its history, until the mid-2010s, Corizon's business was financially successful. *Id*. at ¶ 43. Near the end of the decade, however, Corizon began to witness the loss of key contracts and mounting liabilities, largely driven by claims asserted by incarcerated individuals alleging mistreatment or inadequate healthcare. *Id*.

7. Mr. Lefkowitz, through an entity known as Perigrove 1018, acquired Corizon in December 2021. *Id*. at ¶¶ 45-46. After over $30 million was siphoned off through various insider transactions, Corizon Management orchestrated the Divisional Merger and certain related transactions designed to hinder, delay, and defraud Corizon's creditors. *Id*. at ¶¶ 49-60. This was accomplished by transferring Corizon's ongoing business operations and future business

opportunities to YesCare Corp. ("YesCare") and its newly formed subsidiaries. *Id*. at ¶¶ 91-138. This was done to enrich equity holders and management at Corizon's expense. *Id*.

8. **Mr. Lefkowitz did not act alone**. Public records and documents produced in response to discovery requests served in the Chapter 11 Case show that Sara Tirschwell ("Ms. Tirschwell"), Corizon's Chief Executive Officer, and Jeffrey Scott King ("Mr. King"), Corizon's Chief Legal Officer, played key roles and were extensively involved. *Id*. at ¶¶ 124-134.

9. Ms. Tirschwell and Mr. King, *inter alia*, signed corporate filings necessary to effectuate the formation of YesCare and its subsidiaries and the Divisional Merger. *Id*. Ms. Tirschwell's and Mr. King's involvement was evidenced from public records. Internal records also reflect Corizon Management's involvement in the diversion of corporate opportunities away from Corizon to the newly formed YesCare and its subsidiaries. *Id*. at ¶¶ 151-154.

10. **Mr. Lefkowitz rewarded these individuals for their efforts**. After the 2022 Divisional Merger, (a) Ms. Tirschwell became YesCare's Chief Executive Officer, (b) Mr. King became YesCare's Executive Vice President and Chief Legal Officer, (c) Dr. Ladele, Corizon's former Executive Vice President and Chief Medical Officer, became YesCare's Executive Vice President and Chief Medical Officer, (d) Beverley Michelle Rice ("Ms. Rice"), Corizon's former Corporate Controller, became YesCare's Corporate Controller, (e) Jennifer Lynne Finger ("Ms. Finger"), Corizon's former Assistant General Counsel, became YesCare's Assistant General Counsel, and (f) Frank Jeffrey Sholey ("Mr. Sholey"), Corizon's former Chief Financial Officer, became YesCare's Chief Financial Officer, and later assumed the role of YesCare's Chief Executive Officer in February of 2023. *Id*. at ¶ 148. These individuals formed the core management team that implemented the fraud and, as Corizon officers, breached their fiduciary duties.

11. **For purposes of convenience**, and to avoid unnecessary repetition, the Complaint defines the term "Corizon Management" as including seven specific individuals: Mr. Lefkowitz, Ms. Tirschwell, Dr. Ladele, Mr. King, Ms. Rice, Ms. Finger, and Mr. Sholey. Compl. at p. 2.

12. The Complaint uses the term "Corizon Management" when referring to actions or inactions undertaken by each of these individuals that support the causes of actions asserted against them, including the "Fiduciary Duty Claims" set forth in Count VII (Breach of Fiduciary Duty—Misappropriation of Business Opportunities), Count IX (Breach of Fiduciary Duty), and Count X (Breach of Fiduciary Duty—Red Flags).

13. Each use of the term "Corizon Management" could be replaced with a duplicative paragraph for each of Mr. Lefkowitz, Ms. Tirschwell, Dr. Ladele, Mr. King, Ms. Rice, Ms. Finger, and Mr. Sholey. Doing so would have added unnecessary length to the 83-page Complaint. Further, since these defendants acted in concert or collectively, the Plaintiffs use the collective term "Corizon Management" to describe the particularized actions or inactions taken by this group.

14. **Count VII (Misappropriation of Business Opportunities)**. The Complaint asserts that "Corizon Management" formed YesCare when they owed a fiduciary duty to Corizon. Compl. at ¶ 293. YesCare's receipt of Corizon's operating assets came because of the Divisional Merger, which the Complaint alleges Dr. Ladele had a part in orchestrating. *Id*. at ¶¶ 36, 335. Similarly, the existence of Dr. Ladele's fiduciary duty to Corizon is established by his managerial role within Corizon. *Id*. at ¶¶ 36, 335. The Complaint asserts that each member of "Corizon Management" became officers or directors of YesCare. *Id*. at ¶ 294. Dr. Ladele's individual role within Corizon and YesCare is clearly set forth in the Complaint. *Id*. at ¶¶ 36, 335.

15. The Complaint asserts that "Corizon Management" elected not to respond to RFPs involving new business opportunities on Corizon's behalf but did so instead on behalf of YesCare

and its newly created entities. *Id*. at ¶ 295. This was a collective act and something that Corizon Management did together as a group. *Id*. The Complaint asserts that Corizon was injured by "Corizon Management's" failure to respond to RFPs on Corizon's behalf. *Id*. at ¶ 297. "Corizon Management diverted and exploited for their own benefit business opportunities that should have been deemed assets of the Debtor." *Id*. at ¶ 295.

16. The Complaint asserts that the Plaintiffs are entitled to punitive damages for "Corizon Management's" depriving creditors of potential courses of payment, a factual assertion applicable Dr. Ladele. *Id*. at ¶ 298. The Complaint asserts that Plaintiffs are entitled to recover against "Corizon Management," a factual assertion which applies to Dr. Ladele. *See Id*. at ¶ 299.

17. **Count IX (Breach of Fiduciary Duty)**. The Complaint asserts that Corizon Management breached their fiduciary duties of care, loyalty, and good faith, and provides a list of ***17 misdeeds***, each of which is a breach of such fiduciary duties. *Id*. at ¶ 308.

18. No single assertion describes an act which could only be completed by one defendant. Furthermore, the Complaint's language specifically acknowledges the plural possessive of "their fiduciary duties," contemplating the fiduciary duties owed by each of the members of "Corizon Management," including Dr. Ladele. *Id*.

19. The Complaint asserts that "Corizon Management" failed to keep themselves informed. *Id*. at ¶ 309. The failure of knowledge is attributable to each member of "Corizon Management," including Dr. Ladele, and the Complaint specifically acknowledges the plural possessive of Corizon Management's failure to "inform themselves." *Id*. at ¶ 308. The Complaint asserts that "Corizon Management" failed to exercise reasonable business judgment. *Id*. at ¶ 310. This failure is also attributable to Dr. Ladele. *Id*. The Complaint asserts that Plaintiffs are entitled to recover against "Corizon Management," an assertion applicable Dr. Ladele. *Id*. at ¶ 311.

20. **<u>Count X (Breach of Fiduciary Duty—Red Flags)</u>**. The Complaint again asserts that "Corizon Management" owed fiduciary duties of care, loyalty, and good faith to Corizon. *Id*. at ¶ 313. The Complaint asserts that Corizon Management breached their fiduciary duties of care, loyalty, and good faith, and acted with gross negligence and recklessness, and provides a list of 6 misdeeds, each of which is a breach of such fiduciary duties. *Id*. at ¶ 314. As with Paragraph 308 of the Complaint, no single assertion describes an act which could only be completed by one defendant. The Complaint again contemplates the consistent failure of the members of "Corizon Management" to inform themselves to the degree necessary to satisfy their duties. *Id*. at ¶ 315. As above, this failure of knowledge is attributable to Dr. Ladele. *Id*.

21. The Complaint asserts that "Corizon Management" consistently failed to exercise reasonable business judgment. *Id*. at ¶ 316. This omission is attributable to Dr. Ladele. The Complaint asserts that Plaintiffs are entitled to recover against "Corizon Management," a factual assertion which applies to Dr. Ladele. *Id*. at ¶ 317.

22. In addition to the allegations asserted against Dr. Ladele as a member of "Corizon Management" the Complaint also alleges that Mr. Ladle was among the Corizon executive who orchestrated the Divisional Merger (*see* Compl. at ¶ 36) and that Dr. Ladele was among the Corizon executives rewarded with a position at YesCare (*see* Compl. at ¶ 36, 148, 335). Dr. Ladele, the former Executive Vice President and Chief Medical Officer for Corizon, became the Executive Vice President and Chief Medical Officer at YesCare. *Id.*

23. The full extent of Dr. Ladele's involvement may not become fully known until the completion of discovery in this adversary proceeding. The 83-page Complaint describes the particularized actions or inactions taken by Dr. Ladele, together with the other members of "Corizon Management," that support the assertion of the causes of action in Count VII (Breach of

Fiduciary Duty—Misappropriation of Business Opportunities), and Count IX (Breach of Fiduciary Duty), Count X (Breach of Fiduciary Duty—Red Flags).

24. **Disclosure Statement**. As set forth in the Court-approved Disclosure Statement, Corizon Management's misconduct gives rise to a host of Estate Causes of Action. *See* Bankr. Dkt. No. 1815-2 at §§ II.D & III.A.9.

25. **Releases**. The Plan afforded Corizon Management with releases, as set forth in Article IV.B.7 (Consensual Claimant Release) and Article IV.B.9 (Estate Causes of Action Release). But these releases do not go into effect unless and until the "Final Payment Date."

26. Corizon Management could not get the benefit of either release unless the settlement payments are made in accordance with the Plan. Under the Plan, the Channeling Injunction is the only injunction that went into effect on the Effective Date, which injunction was designed to serve as a bridge between the Effective Date and the Final Payment Date. The Channeling Injunction offered Corizon Management various protections.

27. **Default**. But those protections fell away due to the Settlement Parties' failure to honor the terms of the settlement. *See* Bankr. Dkt. No. 2617.

28. **Adversary Proceeding**. On April 27, 2026, the Plaintiffs timely commenced this adversary proceeding. Central to this lawsuit are the Fiduciary Duty Claims set forth in Counts VII, IX, and X of the Complaint, as well as the fraudulent transfer and related claims set forth in Counts I, II, III, IV, V, VI of the Complaint. Given the subsequent bankruptcy filing by YesCare and certain of its subsidiaries, the Fiduciary Duty Claims, and any D&O insurance that may be responsive thereto, present a key path to recovery to the Plaintiffs.

29. **<u>Motion to Dismiss</u>**. On July 31, 2026, Dr. Ladele filed his Motion seeking the dismissal of Counts VII, IX, X, and XVI for failure to state a claim or, in the alternative, for a more definite statement.

30. Other defendants in this adversary proceeding have filed answers to the Complaint. On June 3, 2026, Defendants M2 HoldCo, LLC, and M2 LoanCo, LLC, filed their answer to the Complaint. *See* Adv. Dkt. No. 10. On June 4, 2026, Defendants Geneva Consulting, LLC, Perigrove, LLC, Perigrove 1018, LLC, and PharmaCorr LLC, filed their answer to the Complaint. *See* Adv. Dkt. No. 12. And on July 6, 2026, Mr. Lefkowitz filed his answer to the Complaint. *See* Adv. Dkt. No. 30.

## <u>ARGUMENT</u>

31. The arguments presented by Dr. Ladele should be rejected by this Court and the Motion should be denied.

### A. The Complaint Provides Dr. Ladele with Adequate <u>Notice of the Allegations and Claims Asserted Against Him</u>

32. Dr. Ladele asks this Court to dismiss the "Fiduciary Duty Claims" set forth in Count VII, Count IX, and Count X under Civil Rule 8(a), contending that the Complaint fails to provide him "with fair notice" of the claims asserted against him. Motion at ¶¶ 9-13. Dr. Ladele contends that the Plaintiffs' use of the defined term "Corizon Management" constitutes an impermissible group pleading. *Id*.

33. But Civil Rule 8 does not prohibit or discourage parties from using defined terms in a complaint to reference multiple defendants in lieu of repeating the same factual allegations for each defendant. *See Texas v. Rising Eagle Cap. Grp. LLC*, No. 4:20-CV-2021, 2021 WL 10343470, at *2 (S.D. Tex. Sept. 27, 2021) ("Nothing in [Fed. R. Civ. P.] 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against

each defendant.") (internal quotations omitted); *Gammon v. J.W. Steel & Supply, Inc.*, No. CIV A H-02-0647, 2006 WL 2505631, at *1 (S.D. Tex. Aug. 28, 2006) ("Defendants' primary complaint about the complaint is that Gammon has used 'generic group pleading' in alleging conduct that violates ERISA, without distinguishing which acts were committed by which defendant. There is no prohibition against group pleading.").

34. Complaints alleging claims for breach of fiduciary duty often use defined terms to reference multiple defendants. This makes logical sense.

35. Corporate actions requiring board approval—e.g., consummating a divisional merger—cannot be taken unless the board members, *as a group*, authorize such actions. Likewise, breach of fiduciary duty claims can arise when corporate officers, *as a group*, undertake collective action or inaction. In these situations, it is proper for a complaint to set forth factual allegations using defined terms that encompass multiple defendants, *i.e.*, group terms, in lieu of repeating the same factual allegations for each defendant.[3]

[3] *See Am. Home Assurance Co., v. Midrex Techs., Inc.*, No. 2:24-CV-182, 2025 WL 4966808, at *3 (S.D. Tex. Mar. 11, 2025) (holding that a complaint that uses group pleading will survive a pleading sufficiency challenge if the defendants "occupied the same position relative to the facts giving rise to the claim, and those facts are clearly spelled out [and] [t]he joint pleading against them does not cross over into the unrelated conduct of other defendants."); *Pedersen v. Kinder Morgan Inc.*, 622 F. Supp. 3d 520, 543 (S.D. Tex. 2022) ("[The] Defendants' group pleading allegations fall flat for three reasons: (1) it is undisputed that the Committee had the sole authority and responsibility for administration of the plan; (2) Defendants' group pleading allegation appear to be a motion for a 'more definite statement,' which Defendants should have filed under Rule 12(e) before the responsive pleading; and (3) Defendants' citation to this Court's ruling in Del Castillo is unpersuasive because Del Castillo is about 'lumping together ... distinct corporate entities,' … it does not bear on the fiduciary responsibilities of the officers of a single company who are all serve as members of a Fiduciary Committee."); *Clapper v. Am. Realty Inv'r, Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015) ("Plaintiffs contend that, where paragraphs in the amended complaint refer to multiple defendants, they intend to allege that each defendant committed the alleged acts. Except, for example, where a statute otherwise requires, plaintiffs are permitted under federal procedure to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act."); *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 723 (Bankr. S.D. Tex. 2009) ("*Northstar*"), ("Where more than one defendant allegedly committed the same act together, a complaint is not defective for the reason that it asserts that all defendants committed the same act, without identifying each individual defendant.").

36. The key issue is whether a complaint provides a defendant with fair notice of the claims asserted against him. The Complaint provides Dr. Ladele with adequate notice of the allegations and claims asserted against him and fully complies with Civil Rule 8.

37. Courts have rejected the use of group terms when (a) the relevant cause of action includes a scienter element (*e.g.*, causes of action subject to the heightened pleading standards set forth in Civil Rule 9),[4] and (b) when the alleged conduct could only have been undertaken by one defendant.[5] Courts, however, permit the use of group terms outside of these contexts where, as here, group conduct is alleged.

38. For example, in *Northstar*, the defendants in a fraudulent transfer action argued that the trustee's complaint violated Civil Rule 8(a) because it lumped the defendants into a group rather than specifying each defendant's individual roles in the fraudulent transfers. 616 B.R. at 723. This Court rejected this argument. *Id*.

39. This Court ruled that "[w]here more than one defendant allegedly committed the same acts together, a complaint is not defective for the reason that it asserts that all defendants committed the same act, without identifying each individual defendant." *Id*.

40. Judge Isgur explained that "[a] fraudulent transfer is not an act that 'inherently could have been committed by only one defendant." *Id*. To the contrary, the trustee's allegations were that "each of the Defendants participated in the transfer alleged." *Id*. The trustee in *Northstar* created and used group terms in the complaint "for convenience" and asserted that the Defendants

---

4 *See Martinez v. City of North Richland Hills*, 846 Fed. Appx. 238, 243 (5th Cir. Feb. 25, 2021) ("*Martinez*") (affirming that group pleading, on its own, does not warrant dismissal; dismissing based upon the scienter element of deliberate indifference claims); *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) (rejecting group pleading in light of the scienter element of the Private Securities Litigation Reform Act); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) (same).

5 *See Wilson v. Deutsche Bank Trust Co.*, No. 13:18-CV-0854-D, 2019 WL 175078, at *7 (N.D. Tex. Jan. 10, 2019) (finding that the complaint impermissibly grouped defendants where the acts alleged "inherently could have been committed by only *one* defendant.") (emphasis in the original).

all committed the alleged acts. *Id*. Thus, the "Complaint did not violate Federal Rules of [Civil] Procedure 8(a)'s prohibition against group pleadings." *Id*.

41. *Northstar*—a case that Dr. Ladele fails to cite or acknowledge in his Motion—is on point. The Fiduciary Duty Claims do not include a scienter element or involve conduct that inherently could have been committed by only one defendant.

42. **Rather, it took a village**. As in *Northstar*, the Plaintiffs' allegations are that Dr. Ladele, in tandem with the other members of "Corizon Management," participated in the alleged misconduct.

43. As the various executives and officers of both Corizon and YesCare, each use of the term "Corizon Management" within the Complaint refers to the collective and particularized actions or inactions of each member, including Dr. Ladele, where not otherwise distinguished.[6] As in *Northstar*, the Plaintiffs created and used the group term "Corizon Management" in the Complaint for convenience. And, as in *Northstar*, the Complaint provides Dr. Ladele with fair notice of the claims asserted against them, making it fully compliant with Civil Rule 8(a).

44. In the face of the foregoing case law, the Motion misstates the governing law, relies on distinguishable authority, and ignores the factual allegations set forth in the Complaint.

45. **<u>First</u>**, Dr. Ladele misstates the legal standard. Motion at ¶ 10. Dr. Ladele argues that for "Fed. R. Civ. P. 8(a)" "'Group Pleading' against multiple defendants is insufficient[.]" *Id*. But the case law cited by Dr. Ladele in his Motion disagrees with Dr. Ladele's framing of the legal

---

[6] *See Westlake Corp. v. Chemcorp 1 LLC*, No. CIV A H-24-99, 2024 WL 3029019, at *5-6 (S.D. Tex. June 17, 2024) (finding that group pleading, does not warrant dismissal and noting that "courts in this Circuit have focused on whether alleged 'shotgun pleading' defects actually muddy the complaint with complicated, irrelevant, extraneous, or confusing facts, or leave the complaint devoid of essential allegations[.]") (cleaned up) (internal quotations omitted).

standard.[7] As noted above, group actions may be pled with group pleading. *See Northstar*, 616 B.R. at 723.

46. **Second**, Dr. Ladele relies on case law that is facially inapplicable here. *See Motion* at ¶ 10. *Childers v. Lifestyles Unlimited Inc.*,[8] for example, raised discrimination, hostile work environment, and retaliation claims, each of which requires individual acts and each of which, as alleged in *Childers*, was devoid of any non-conclusory allegations.[9]

47. In *Martinez*,[10] the Fifth Circuit distinguishes between permissible and impermissible group pleading, noting that deliberate indifference is a type of claim which requires the pleading of individual acts and cannot be shown through the actions of a cumulative group. Similarly, *Tow v. Bulmahn*,[11] the Court distinguishes the particular failings of the group pleading therein, noting that the trustee failed to "plead a factual basis for the allegations that these

---

[7] In *Martinez*, cited in the Motion at Paragraph 10, the Fifth Circuit noted that "creating a category of multiple defendants into a clearly defined term does not, of itself, warrant dismissal." 846 Fed. Appx. at 243. In *Barnett v. American General Life Insurance Co.*, cited in the Motion at Paragraph 7, the District Court for the Western District of Texas acknowledges that the use of group pleading is sufficient if it allows the court to find that the defendants "acted in concert or were somehow collectively responsible for each others' actions." No. A-09-CA-935-SS, 2010 WL 11566353, at *3 (W.D. Tex. Oct. 7, 2010). And in *Cubas v. St. James Parish School Board*, cited in the Motion at Paragraph 7, the Eastern District of Louisiana reiterated the above-quoted language in *Martinez*, and noted that "because Rule 12(b)(6) motions to dismiss are viewed with disfavor in this Circuit and are rarely granted, the Court will not dismiss Plaintiff's allegations or claims on the basis of her use of group pleading." No. 20-1322-WBV-KWR, 2021 WL 1212537, at *7 (E.D. La. Mar. 31, 2021).

[8] No. 3:22-CV-2615-X, 2023 WL 3961702 (N.D. Tex. 2023). *See* Motion at ¶ 10.

[9] *Id*. at *3-*6 (The court noted that, regarding the discrimination claim, "Childers does not identify any specific comparators, much less offer any facts to show that she and her comparators were similarly situated or that the Lifestyles Entities treated them differently under nearly identical circumstances;" regarding the hostile work environment claim, "Childers provides only the conclusory and vague assertion that she 'was subjected to unwelcome harassment based on her race, including a hostile work environment,' but she fails to identify even one specific instance of harassment;" and regarding the retaliation claim, "Childers fails to disclose who she complained to about the alleged race discrimination, what she complained about specifically, or any details about the alleged actions taken against her due to her complaint.").

[10] 846 Fed. Appx. at 243. *See* Motion at ¶10.

[11] No. 15-3141, 2016 WL 1722246 (E.D. La. Apr. 29, 2016). *See* Motion at ¶ 10.

defendants share collective responsibility for the challenged decisions." *Id*. at *17. Again, this is a case involving group conduct.

48. **Third**, Dr. Ladele asserts that the Complaint "identifies no specific actions taken by" Dr. Ladele. Motion at ¶ 12.

49. But the Motion overlooks the Complaint's specific factual allegations that support the breach of fiduciary duty claims and that explain how those acts caused injury to Corizon. Dr. Ladele ignores the individual allegations against him, including the allegations asserted against him by each use of the term "Corizon Management."

50. Unlike the "loosely-defined groups" found in *Tow v. Bulmahn*, No. 15-3141 2016, WL 1722246, at *17 (E.D. La. Apr. 29, 2016), the Complaint utilizes a discrete term to refer to a particular subset of defendants, including Dr. Ladele, who acted commonly, pursuant to their respective managerial roles at Corizon.

51. Each use of the term "Corizon Management" in the Complaint refers to actions or inactions attributable to Dr. Ladele, together with, Mr. Lefkowitz, Ms. Tischwell, Ms. Rice, Mr. King, Ms. Finger, and Mr. Sholey. Count VII details how each of the members of "Corizon Management" breached their fiduciary duties by electing not to respond to RFPs on behalf of Corizon, exploiting opportunities for their own benefit that should have been deemed assets of the Debtor. Compl. at ¶ 295.

52. Count IX details how each of the members of Corizon Management breached their fiduciary duties of care, loyalty, and good faith by, *inter alia*, failing to investigate and inform themselves of the medical malpractice issues plaguing Corizon, failing to act in the face of mounting medical malpractice liabilities, failing to adequately respond to and address longstanding

medical malpractice issues, failing to promptly undertake corrective actions, and abdicating their decision-making authority to Mr. Lefkowitz. Compl. at ¶ 308.

53. Count X describes the red flags each of the members of Corizon Management ignored, thus breaching their fiduciary duties, including, *inter alia*, failing to timely take action concerning the Signature Accounts, failing to investigate and inform themselves of the medical malpractice issues with Corizon's business including ignoring warnings concerning medical malpractice liabilities, delaying addressing Corizon's medical malpractice problems, and failing to adequately respond to and address longstanding medical malpractice issues. Compl. at ¶ 314.

54. Taken together with the individual allegations set forth against Dr. Ladele, the allegations against "Corizon Management"—each being attributable to Dr. Ladele—establish sufficient plausible claims for the breach of his fiduciary duties. As noted in the Motion, under Texas law the elements of breach of fiduciary duty claim are generally "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages."[12]

55. As described above, the existence of Dr. Ladele's fiduciary duties to Corizon are established by the allegations setting forth his managerial role as the Executive Vice President and Chief Medical Officer of Corizon. Compl. at ¶¶ 36, 335.[13] Dr. Ladele breached that duty where he, *inter alia*, (i) failed to respond to RFPs on behalf of Corizon (Compl. at ¶ 295); (ii) failed to investigate and inform himself of the medical malpractice issues plaguing Corizon and failed to adequately respond to and address those longstanding medical malpractice issues (*id.* at ¶ 308);

---

12 *See* Motion at ¶ 9 (quoting *United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017)).

13 *See e.g.*, *Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014) ("Director, or those acting as directors, owe a fiduciary duty to the corporation in their directorial actions, and this duty 'includes the dedication of [their] uncorrupted business judgment for the sole benefit of the corporation.'") (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963).

and (iii) failed to promptly undertake any corrective action in the face of those longstanding medical malpractice issues (*id.* at ¶ 314).

56. The Complaint alleges that Dr. Ladele's breaches caused substantial injury. Dr. Ladele's failure to respond to RFPs—together with the similar failure of each member of Corizon Management—lost Corizon the value of lucrative contracts. *Id.* at ¶¶ 113, 296-97. Dr. Ladele's failure to investigate and inform himself of the medical malpractice issues plaguing Corizon and failure to adequately respond to and address those longstanding medical malpractice issues—together with the similar failure of each member of Corizon Management—created substantial liability for Corizon. *Id.* at ¶¶ 61-78, 309-11. Similarly, Dr. Ladele's failure to promptly undertake any corrective action in the face of those longstanding medical malpractice issues—together with the similar failure of each member of Corizon Management—perpetuated substantial liability for Corizon. *Id.* at ¶¶ 61-78, 315-17.

57. Under the applicable standard, which provides that well-pleaded allegations be accepted as true and liberally construed in favor of the Plaintiffs,[14] the Complaint has sufficiently asserted plausible claims supported by non-conclusory factual allegations such that the Court could find that Dr. Ladele breached his fiduciary duties in the manner described in Counts VII, IX, and X.

**B. <u>A More Definite Statement Is Not Required</u>**

58. Dr. Ladele argues, in the alternative, that if his request for dismissal is denied, the Plaintiffs should be required to amend the Complaint to provide a more definite statement of the Fiduciary Duty Claims. Motion at ¶ 16.

---

14 *See*, *e.g.*, *In re Josiah's Trucking, LLC*, 645 B.R. 208, 214 ("When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.") (denying motion to dismiss) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005) ("Motions to dismiss are viewed with disfavor and are rarely granted.").

59. But, as Dr. Ladele admits, a motion for a more definite statement is appropriate only if a complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Id*. at ¶ 17.

60. The authorities cited by Dr. Ladele in Paragraph 18 of his Motion illustrate the sort of severe defects that must be shown for the Court to require a more definite statement. *See Fareed v. City of Carrollton*, No. 3:24-cv-3251-N, 2025 WL 1707957 at *6 (N.D. Tex. June 17, 2025) (complaint contained "incomplete allegations," "no punctuation and … an incomplete thought," and "contradictory facts," and failed to distinguish distinct discriminatory incidents in two separate cities); *McKarry v. Dow Chem. Co*., No. CIV A 17-7830, 2019 WL 13221935 at *3 (E.D. La. Apr. 22, 2019) (unopposed motion where injured worker failed to even "briefly explain [the] who, what, when, where, why, and how regarding the defendants' alleged wrongdoings."); *Bitte v. United Cos. Lending Corp.*, No. 06-5648, 2006 WL 3692754 at *1 (E.D. La. Dec. 11, 2006) (pro se plaintiff pled rhetoric that defendant "'lied,' [] used 'false pretenses,' [] 'manufactured documents,' [and] effected a false property transfer" without "explain[ing] the factual basis" for the allegations).

61. Here, the Complaint is not unintelligible like the pleadings in those cases (or anywhere close). As detailed above, the Complaint contains detailed allegations of the conduct constituting Dr. Ladele's breaches of fiduciary duty that are sufficient to identify a plausible claim upon which relief could be granted.

62. The Complaint already pleads the breaches of fiduciary duty at issue as to Dr. Ladele and does not warrant a more definite statement. *See Brown v. Maxxam*, No. CIV A 90-1468, 1991 WL 13918 at *3 (E.D. La. Jan. 28, 1991) (denying motion for more definite statement where plaintiff collectively pled that a group of defendants breached fiduciary duties); *see also In re Giant Gray, 629 B.R. 814, 855* (Bankr. S.D. Tex. 2020) ("*Giant Gray*") (denying motion for

more definite statement as to collective pleading of multi-defendant fraudulent transfer scheme, on the basis that "there are enough facts elsewhere in the complaint to render it plausible that [plaintiff] has a plausible claim against [defendants] upon which relief could be granted.").

63. Mr Ladele's recitation and discussion in the Motion of myriad allegations at issue, coupled with the fact Dr. Ladele had knowledge of his exact roles in the breaching conduct at issue, further forecloses his contention that the Complaint is fatally unintelligible. *See Babcock & Wilson Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633-634 (E.D. La. 2006) ("This motion is further disfavored when 'the particular information defendant is seeking is within defendant's own knowledge, which mitigates in favor of denying the motion.' … Defendants' own motion demonstrates their understanding of the claims asserted and their knowledge of facts underlying those claims.").

64. Indeed, the fact that Mr. Isaac Lefkowitz himself has answered the Complaint's fiduciary duty claims (*see* Adv. Dkt. No. 30), including the factual allegations that use the term "Corizon Management," shows that such claims can be answered. *Brown*, 1991 WL 13918 at *3 ("The ability of the other defendants to answer the plaintiffs' complaint casts considerable doubt on the proposition that the complaint is vague and ambiguous enough to make it unreasonable to require [moving defendant] to file a responsive pleading.").

65. As the Court held in *Giant Gray*, Civil Rule 12(e) "is intended for complaints that are unintelligible, not complaints that merely lack detail" and all that is required for pleading purposes is that "there are enough facts elsewhere in [the] complaint to render it plausible that [plaintiff] has a plausible claim against [defendants] upon which relief could be granted." 629 B.R. at 855. The Complaint and its allegations of Dr. Ladele's breaches of fiduciary duties meet this standard.

66. Any additional information that Dr. Ladele desires regarding the claims must be sought through discovery, not a motion for more definite statement. *Id.* at 854 ("[I]f the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied."). For the foregoing reasons, the Motion for a more definite statement under Civil Rule 12(e) should be denied.

**C. <u>Plaintiffs' Fee Claim Should Not Be Dismissed</u>**

67. Dr. Ladele argues that Counts VII, IX, and X do not support the recovery of attorneys' fees and that the Plaintiffs' claim for attorneys' fees and costs in Count XVI of the Complaint should be dismissed on this basis. Motion at ¶¶ 14-15. But Count XVI of the Complaint simply requests that the Court award reasonable attorneys' fees and costs "[t]o the extent allowed by applicable law." Compl. at ¶ 354. Thus, the Plaintiffs are only seeking attorney's fees and costs that are allowed by applicable law. *Id.* This Court does not need to determine, at this stage, whether the Plaintiffs are entitled to attorney's fees and costs.

68. Dr. Ladele asserts in his Motion that there is an unresolved question of choice of law, specifically whether Texas or Delaware law applies to the Fiduciary Duty Claims. *See* Motion at ¶ 15, fn. 8. Dr. Ladele contends that attorney's fees are only recoverable if Delaware law applies and the breach of fiduciary duty involves "an egregious breach of duty of loyalty." *Id.* (citing *Sorrento Therapeutics, Inc. v. Mack*, 2025 Del. Ch. LEXIS 195, at *36-37 (Del. Ch. July 31, 2025)). Dr. Ladele does not set forth any analysis of choice of law factors that would allow the Court to determine the applicable law at this stage.

69. This case involves an egregious breach of the duty of loyalty, including the systematic misappropriation of Corizon's assets and diversion of future business to YesCare to defraud Corizon's creditors. If Delaware law applies to the Fiduciary Duty Claims, as Corizon was a Delaware corporation before converting to a Texas corporation before the Divisional Merger

(*see* Compl. at ¶ 125), then under Dr. Ladele's own logic, the Court may award the Plaintiffs' attorney fees and costs in this proceeding, subject to the evidence presented.

## CONCLUSION

70. The Complaint provides Dr. Ladele with fair notice of the claims asserted against him and plausibly alleges each challenged claim. The Motion should be denied.

Dated: August 21, 2026.

Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Eric R. Goodman*
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Susan Sieger-Grimm (*pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: egoodman@brownrudnick.com
cmoxley@brownrudnick.com
gcicero@brownrudnick.com
ssiegergrimm@brownrudnick.com

**STINSON LLP**

*/s/ Nicholas Zluticky*
Nicholas Zluticky (SDTX Bar No. 3845893)
Zachary H. Hemenway (SDTX Bar No. 3856801)
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email: nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic means via the ECF transmission to all PACER System participants in this proceeding on August 21, 2026.

*/s/ Eric R. Goodman*
Eric R. Goodman