**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br><br>TEHUM CARE SERVICES, INC.,[1]<br><br>Debtor. | ) | Chapter 11<br><br>Case No. 23-90086 (CML) |
| MATTHEW J. DUNDON, solely in his capacity as the GUC TRUSTEE of the GUC TRUST, MICHAEL ZIMMERMAN, solely in his capacity as the PI/WD TRUSTEE of the PI/WD TRUST, and THE POST-EFFECTIVE DATE DEBTOR,<br><br>Plaintiffs,<br>v.<br><br>YITZCHAK LEFKOWITZ a/k/a ISAAC LEFKOWITZ, YESCARE CORP., CHS TX, INC., GENEVA CONSULTING, LLC, PERIGROVE, LLC, PERIGROVE 1018, LLC, M2 HOLDCO, LLC, M2 LOANCO, LLC, PHARMACORR LLC, SARA ANN TIRSCHWELL, AYODEJI OLAWALE LADELE, BEVERLY MICHELLE RICE, JEFFREY SCOTT KING, JENNIFER LYNNE FINGER, and FRANK JEFFREY SHOLEY,<br><br>Defendants. | ) | Adv. Pro. No. 26-03138 (CML) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT SARA ANN TIRSCHWELL'S MOTION (I) TO DISMISS PLAINTIFFS' COUNTS III, VII, IX, X, AND XVI FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, (II) FOR A MORE DEFINITE STATEMENT**

[1] The last four digits of the Debtor's federal tax identification number are 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

Plaintiffs Matthew J. Dundon, solely in his capacity as the GUC Trustee[2] of the GUC Trust, Michael Zimmerman, solely in his capacity as the PI/WD Trustee of the PI/WD Trust, and the Post Effective Date Debtor (collectively, the "Plaintiffs"), by and through their counsel, file this opposition (the "Opposition") to Defendant Sara Ann Tirschwell's Motion (I) to Dismiss Plaintiffs' Counts III, VII, IX, X, and XVI for Failure to State a Claim or, in the Alternative, (II) for a More Definite Statement (Adv. Dkt. No. 40) (the "Motion") filed by Defendant Sara Ann Tirschwell ("Ms. Tirschwell"). In support of this Opposition, the Plaintiffs respectfully state as follows.

## INTRODUCTION

1. Plaintiffs' complaint (the "Complaint") notifies Ms. Tirschwell of her alleged involvement in the fraud and the specific accusations that she breached her fiduciary duties. *See* Adv. Dkt. No. 1. It also sufficiently details her alleged role in transferring assets and opportunities from Corizon Health, Inc. ("Corizon") to YesCare Corp. ("YesCare").

2. Ms. Tirschwell, in coordination with Yitzchak Lefkowitz a/k/a Isaac Lefkowitz ("Mr. Lefkowitz") and others, separated Corizon's assets and credits from its liabilities and debts, transferring the former into YesCare, and its subsidiaries, while leaving the latter in the hands of Corizon. Ms. Tirschwell was handed the helm of a struggling ship (Corizon). Rather than correcting course and focusing on repairs, she stripped it for parts so that she could captain an unencumbered vessel (YesCare), while Corizon was left to sink into the abyss.

3. Ms. Tirschwell's self-dealing breached her fiduciary duties to Corizon. Her claim of insufficient notice, based on confusion over group terminology, is unfounded. In the Complaint, the Plaintiffs define the term "Corizon Management" to include Ms. Tirschwell—as one of seven

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Complaint filed in the above-captioned adversary proceeding at Docket No. 1 and the *First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (Bankr. Dkt. No. 2014 at Ex. B) (the "Plan").

corporate executive defendants—and allege that these individuals acted collectively and breached their fiduciary duties to Corizon. *See* Compl. at p. 2.

4. Any confusion Ms. Tirschwell suffers as to the allegations against "Corizon Management," and her membership therein, is subjective. Mr. Lefkowitz has responded to the Complaint's fiduciary duty claims (*see* Adv. Dkt. No. 30), including those referencing "Corizon Management," demonstrating that these claims have been sufficiently pleaded.

5. Even if, on the Motion's insistence, Count VII (Breach of Fiduciary Duty—Misappropriation of Business Opportunities), Count IX (Breach of Fiduciary Duty), and Count X (Breach of Fiduciary Duty—Red Flags) (together with Counts VII and IX, the "<u>Fiduciary Duty Claims</u>"), were pleaded ***only*** against Ms. Tirschwell, the Complaint provides ample examples of her alleged breaches. Ms. Tirschwell has notice of the claims against her, and her motion to dismiss the Fiduciary Duty Claims should be denied. Similarly, the allegations in the Complaint are sufficiently precise and do not warrant granting Ms. Tirschwell's alternative request for a more definite statement. Lastly, the availability of attorneys' fees depends on the facts, which means that Count XVI (Attorney's Fees and Costs) is not ripe for dismissal.

## <u>BACKGROUND</u>

6. The Complaint is 83 pages and outlines sixteen causes of action against eight corporate entities, seven executives, and fifty unidentified Does. Due to its scope, it is important to summarize the claims and the factual allegations related to Ms. Tirschwell's involvement.

7. **The Company**. Corizon was a nationwide provider of correctional healthcare, operating in multiple states. In its regular business operations, Corizon entered into agreements with governmental entities to provide healthcare services to inmates and detainees in correctional institutions across the country. Compl. at ¶ 42.

8. **The Mounting Debts and Liabilities**. In the late 2010s and early 2020s Corizon began to fall short of its contractual obligations and accumulating significant tort liabilities.

9. Corizon failed to provide a sufficient level of care (Compl. at ¶ 61) to the point of malpractice and found itself the target of numerous lawsuits. The Complaint details a small sampling of these liabilities, including claims for (i) the wrongful death of Daniel Allard (Compl. at ¶¶ 62-65); (ii) the improper treatment of David J. Hall (Compl. at ¶¶ 66-67); (iii) the ignoring of Rachel Garwood's scabies symptoms (Compl. at ¶¶ 68-73); and (iv) the failure to detect a hole in Kohchise Jackson's gastrointestinal tissues (Compl. at ¶¶ 74-78). On Mr. Jackson's claim alone, Corizon's adjudicated liabilities exceeded $300 million. Compl. at ¶ 78.

10. Concurrently, Corizon shirked its contractual obligations to pay its vendors, racking up (i) more than $31 million in delinquent payments to St. Luke's Health System (Compl. at ¶¶ 80-82); (ii) more than $23 million in delinquent payments to Capital Region Medical Center (Compl. at ¶¶ 83-85); (iii) nearly $5 million in delinquent payments to Maxim Healthcare Staffing Services, Inc. (Compl. at ¶¶ 86-87); and (iv) more than $15 million in delinquent payments to Saint Alphonsus Health System, Inc. (Compl. at ¶¶ 88-90).

11. **Ms. Tirschwell's Introduction**. In December 2021, Corizon was acquired by Perigrove 1018, LLC ("Perigrove 1018"). Compl. at ¶¶ 46, 91. That same month, and under the direction of Mr. Lefkowitz, a significant investor in Perigrove 1018 (Compl. at ¶ 31), Ms. Tirschwell was hired as Corizon's Chief Executive Officer (Compl. at ¶ 92).

12. **The Fraud**. As the Complaint describes, upon joining Corizon, Ms. Tirschwell and Mr. Lefkowitz "decided to implement a restructuring," which "involves a divisional merger under Texas law in which a subsidiary splits its assets and liabilities between two entities." Compl. at

¶ 93. They kicked off this process after Ms. Tirschwell joined Corizon, with Mr. Lefkowitz seeking advice on this process as early as January of 2022. Compl. at ¶¶ 95-96.

13. Over the next five months, the plan crystallized. Corizon's current business, future business opportunities, and favored liabilities would be transferred and vested in a new company named CHS TX, Inc. ("CHS TX"), while disfavored historical liabilities—including contract debts and tort-based liabilities—were to be retained by Corizon. Compl. at ¶¶ 99-100. Once formed, CHS TX would be acquired by YesCare. *Id.*

14. The plan was executed quickly. On January 31, 2022, YesCare was formed with Sara Tirschwell as its sole director. Compl. at ¶¶ 102-03. On April 28, 2022, Corizon converted to a Texas corporation. Compl. at ¶ 125. That same day, Corizon's direct parent, Valitás Health Services, Inc. ("Valitás") was also converted to a Texas corporation. Compl. at ¶ 126.

15. On May 3, 2022, Corizon, LLC, and Corizon Health of New Jersey, LLC, each a subsidiary of Corizon (Compl. at ¶ 125), were merged with Corizon and Valitás in Texas with Corizon as the surviving entity (Compl. at ¶ 127). As a result, Corizon was vested with the assets and liabilities of all four entities. Compl. at ¶ 128.

16. On May 3, 2022, CHS TX was formed with Ms. Tirschwell as a director, organizer, and sole shareholder. Compl. at ¶¶ 129, 294. On June 1, 2022, Corizon changed its name to Tehum Care Services, Inc. ("Tehum") which, as translated from Hebrew, means "abyss." Compl. at ¶¶ 134-35. Corizon, now Tehum, was allocated all inactive and expired customer contracts and historical liabilities, both in contract and tort, while CHS TX was vested with Corizon's productive assets and its favored liabilities. Compl. at ¶¶ 136, 138. Ms. Tirschwell then contributed 95% of the equity of CHS TX (as its sole shareholder) to YesCare. Compl. at ¶ 294.

17. **Ms. Tirschwell's Part In The Scheme**. Ms. Tirschwell was no mere unwitting participant; she actively contributed to the overall scheme, diverting new business opportunities away from Corizon ***while she was still serving as its Chief Executive Officer***.

18. The Complaint describes how Ms. Tirschwell, along with Corizon Chief Legal Officer Scott King ("Mr. King") pitched requests for proposals under newly formed YesCare subsidiaries including CHS AL, LLC ("CHS AL"), and CHS AZ, LLC ("CHS AZ"), directly funneling away new business opportunities away from Corizon. Compl. at ¶¶ 104-05.

19. Following Mr. Lefkowitz's directions, on March 22, 2022, Ms. Tirschwell and Mr. King caused the submission of a proposal by CHS AZ for a contract with the Arizona Department of Corrections, Rehabilitation & Reentry. Compl. at ¶ 108. The contract bid was submitted on YesCare letterhead and described CHS AZ as a YesCare Company. *Id.*

20. Similarly, Ms. Tirschwell and Mr. King bid for a contract with the Alabama Department of Corrections, and on December 2, 2022, a YesCare subsidiary was awarded a more than $1 billion contract for correctional facility healthcare services to be performed between April 2023 and September 2027. Compl. at ¶ 113; Compl. at ¶ 113 at Ex. F.

21. The Arizona contract bid is worth particular attention as Ms. Tirschwell actively directed the suppression of Corizon to the benefit of YesCare. Ms. Tirschwell communicated to Mr. King, in preparation for the Arizona contract bid, that she and Mr. Lefkowitz did not want application materials to be placed on Corizon letterhead or be associated with Corizon's logo or name. Compl. at ¶ 122, Compl. at ¶ 122 at Ex. L. She was also personally overseeing the finalization of the new YesCare logo to be used on bid materials, and was directing Corizon staff, through Mr. King, on how the materials should be presented.

22. **A Scheme She Was Proud Of**. Ms. Tirschwell was not quiet about abandoning Corizon and favoring YesCare; in fact, she issued a press release laying the scheme out in the open and shared it with Corizon's contracted counterparties. Therein she announced that:

> the dedicated employees of Corizon Health have teamed up with a healthcare conglomerate to create YesCare, launching our new vision for correctional healthcare nationwide and announcing C-Suite leadership to drive the company's next chapter as a leading correctional healthcare company. . . . It has been an honor to serve you and all the patients at your facility. Please join us in our excitement for this next stage of innovative and compassionate care, under the YesCare name. I invite you to visit our new website at www.yescare.com.
>
> Thank you,
> Sara Tirschwell
> Chief Executive Officer, YesCare

Compl. at ¶ 152; Compl. at ¶ 152 at Ex. X. This announcement was followed by details of the new arrangement including:

> YesCare acquired all the active business of Corizon. As part of this acquisition your contract with Corizon is now vested with CHS TX, LLC ("CHS"), and [sic] a wholly owned subsidiary of YesCare.
>
> . . .
>
> To ensure that payments under the contract continue without interruption, we will be providing you with CHS' FEIN (tax id number) and a W-9 form as part of our next invoice.
>
> . . . .
>
> Because CHS was split from Corizon through a merger transaction, your contract has not been assigned or transferred and no other action with respect to the contract is necessary.
>
> Any future contracts amendments we will want to reflect [sic] that CHS is the successor contracting entity because of the merger transaction.

Compl. at ¶¶ 153-54 at Exs. Y, Z. As detailed in the Complaint, this message was sent to at least (i) a representative of the Brevard County, Florida Sheriff's Office on June 2, 2022; (ii) a representative for the Wyoming Department of Corrections on June 3, 2022; and (iii) a

representative of the Virginia Department of Corrections on June 3, 2022. Compl. at ¶¶ 153-154; Compl. at ¶¶ 153-54 at Exs. Y, Z.

23. **Ms. Tirschwell Came Out A Winner**. On or about May 5, 2022, Ms. Tirschwell was appointed as the Chief Executive Officer of YesCare, which would in short order be vested with all of Corizon's beneficial assets and liabilities while purporting to be unburdened by Corizon's debts and liabilities. Compl. at ¶ 130.

24. Ms. Tirschwell oversaw and facilitated the sinking of one ship (Corizon) only to be rewarded with the helm of an undamaged vessel (YesCare). While Corizon, aptly renamed as Tehum, consumed all the encumbrances, the inactive and expired customer contracts, and all historical liabilities both in tort and contract (Compl. at ¶ 136), CHS TX, and its parent YesCare, sailed away with all Corizon's productive assets and its favored liabilities (Compl. at ¶ 138).

25. **Tehum (formerly Corizon) And Its Creditors Were Left On The Sinking Ship**. Saddled with hundreds of millions of dollars in liabilities and effectively no functional assets, the Complaint details the purported consideration Tehum received from the Divisional Merger: (i) $1 million in cash from Corizon's accounts; (ii) release from its purported secured debt obligation to M2 LoanCo, LLC; and (iii) the right to withdraw from a funding pool capped at $15 million, for costs of operations and certain liabilities that arose prior to the divisional merger. Compl. at ¶¶ 132, 137. On February 13, 2023, only nine months after the completion of the divisional merger, Tehum filed for bankruptcy. Compl. at ¶ 182.

## ARGUMENT

26. The arguments presented by Ms. Tirschwell should be rejected by this Court and the Motion should be denied.

### A. Standard of Review

27. In the Fifth Circuit, motions to dismiss are viewed unfavorably and are rarely granted. *Drake v. City of Haltom City*, 106 F. App'x. 897, 899 (5th Cir. 2004) (reversing dismissal). Courts are to "accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014). And "'[u]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' the complaint should not be dismissed." *In re Cantu*, No. 08-70260, 2009 WL 1066237, at *3 (Bankr. S.D. Tex. Apr. 17, 2009) (vacating dismissal) (quoting *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999)).

### B. The Complaint States a Plausible Claim for Conspiracy to Commit a Fraudulent Transfer

28. The crux of the Motion's argument seeking dismissal of Count III can be boiled down to a single line: Ms. Tirschwell argues that the Complaint lacks sufficiently particularized facts to support a fraud claim to satisfy the heightened pleading standard of Fed. R. Civ. P. ("Civil Rule") 9, as incorporated in the Fed. R. Bankr. P. ("Bankruptcy Rule") 7009. Motion at ¶¶ 20-31.

29. As Plaintiffs have previously argued elsewhere[3] Ms. Tirschwell can be held liable for civil conspiracy to commit a fraudulent transfer based on the fact that she and others actively coordinated the unlawful stripping of assets from Corizon.[4] The Texas Supreme Court has

[3] Adv. Dkt. No. 31 at ¶¶ 39-48.

[4] *See Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 609 (5th Cir. 2021) (fraudulent transfer claim can serve as the "underlying tort" for a conspiracy claim); *Bilíouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 740 (N.D. Tex. 2008) (violation of TUFTA is an "unlawful act" sufficient to support cause of action for "civil conspiracy, aiding and abetting, [and] joint enterprise"); *In re Northstar Offshore Grp.*, LLC, 616 B.R. 695, 743 (Bankr. S.D. Tex. 2009) (rejecting defendants' argument that Texas law does not provide for causes of action for conspiracy or aiding and abetting to commit fraudulent transfers and finding that the litigation trust alleged facts plausibly supporting a claim against defendants for conspiring to effect fraudulent transfers); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366 (Tex. App. 2012) (holding that attorneys who were involved in an allegedly fraudulent transaction could be liable for conspiracy to commit a fraudulent transaction under Texas law).

affirmed the long-standing common law rule that corporate agents are personally liable for their own fraudulent or tortious acts even when acting on behalf of the corporation. *See Keyes v. Weller*, 692 S.W.3d 274 (Tex. 2024) (holding that the protections of Texas Business Organizations Code Section 21.223 do not abrogate the common law). That Ms. Tirschwell can be held liable for conspiracy to commit a fraudulent transfer based on her direct participation in the fraud is consistent with the holding in *Essex Crane* and Texas law.

30. To this, the Motion asserts that the Complaint fails to plead the who, what, when, where, and why of Ms. Tirschwell's involvement in the underlying fraudulent conduct, in a way that sufficiently satisfies Civil Rule 9's pleading standard and suggests that the Complaint only alleges that Ms. Tirschwell knowingly signed board-approved documents. Motion at ¶¶ 19, 20, 23, 31, 34. A facial reading of the Complaint and its exhibits[5] shows that Ms. Tirschwell was a willing participant in, and active agent of, the underlying fraud.

31. Taking each element in turn: the **who** is self-evidently Ms. Tirschwell. The **what** is six-fold: (i) Ms. Tirschwell, together with Mr. Lefkowitz, decided to bifurcate Corizon's assets and liabilities (Compl. at ¶ 92); (ii) she directed Corizon staff to remove Corizon's name and logo from healthcare contract bids (Compl. at ¶ 122; Compl. at ¶ 122 at Ex. L); (iii) she worked towards finalizing the YesCare logo to be used on new contract bids in place of the Corizon logo (*id.*); (iv) she, together with Mr. King, prepared and submitted (or caused to be submitted) RFPs for YesCare subsidiaries, including CHS AZ and CHS AL, rather than Corizon (Compl. at ¶¶ 104-13); (v) she facilitated the transfer of Corizon contracts to YesCare by issuing a press release informing Corizon contracting counterparties that services would henceforth be provided by YesCare

[5] *Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir. 2007) ("A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a [Civil Rule] 12(b)(6) dismissal proceeding.").

(Compl. at ¶ 152; Compl. at ¶ 152 at Ex. X); and (vi) once CHS TX was vested with Corizon's productive assets and its favored liabilities, Ms. Tirschwell transferred 95% of the equity of CHS TX (as its sole shareholder) to YesCare (Compl. at ¶ 294).

32. The Complaint also outlines the **when**, noting that Ms. Tirschwell joined Corizon as its Chief Executive Officer in December 2021 (Compl. at ¶ 92), decided with Mr. Lefkowitz to effectuate the fraud between December 2021 and January 2022 (Compl. at ¶¶ 93, 95-96); assisted in effectuating the fraud between January and June 2022 (Compl. at ¶¶ 102-03, 125-29, 134-36, 138, 294), and then funneling business to YesCare, rather than Corizon, between June 2022 and December 2022 (Compl. at ¶¶ 104-05, 108, 113, 122).

33. The **where** is Texas, Tennessee, and several other jurisdictions (Compl. at ¶¶ 27-28, 35, 92-93, 102, 111, 147). And the **why** is the personal benefit of becoming CEO of YesCare (Compl. at ¶ 130), a correctional healthcare company which could bid for, and win, billion-dollar contracts (Compl. at ¶ 133), without any of the accumulated tort and contract liabilities encumbering Corizon (Compl. at ¶¶ 61-78, 80-90, 136, 138).

34. The Motion's tunnel vision concerning the Signature Accounts and entity formations (Motion at ¶¶ 19, 20, 23, 31, 34) misses the big picture. As mentioned, the Complaint alleges sixteen counts against fifteen named defendants. The fraudulent scheme it alleges is sweeping, involving many participants and moving pieces.

35. Ms. Tirschwell was a part of the fraudulent activity contemplated by Count III. As detailed above, Ms. Tirschwell, together with Mr. Lefkowitz and Mr. King, effectuated the frauds contemplated in Count I and Count II (Compl. at ¶ 263) and substantially assisted in the restructuring scheme (Compl. at ¶ 264) which caused the allocation of Corizon's active contracts,

employee-related assets and other viable assets to CHS TX (Compl. at ¶¶ 246 (Count I), 253 (Count II)) substantially injuring the Debtor and its creditors (Compl. at ¶ 265).

36. Turning to the Motion's additional arguments concerning Count III, the Motion acknowledges that claims for constructive fraudulent transfers are not required to meet Civil Rule 9(b)'s heightened pleading standard and that Count II is such a claim. *See* Motion at ¶ 21. *See also In re Anadrill Directional Servs. Inc.,* 676 B.R. 860, 868 (Bankr. S.D. Tex. 2026) (citing *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118–19 (5th Cir. 2019)). Count II is an underlying claim supporting the conspiracy to commit a fraudulent transfer claim found in Count III. Compl. at ¶¶ 262-63.

37. The Complaint should survive on the basis that it pleads the elements of conspiracy. Under Texas law this requires a facial showing of (i) a combination of two or more persons; (ii) an object to be accomplished; (iii) a meeting of the minds on the object or course of action; (iv) one or more unlawful, overt acts; and (v) damages as a proximate result. *See Spencer & Assocs., P.C. v Harper*, 612 S.W.3d 338, 354 (Tex. App. – Houston 1st Dist. 2019).

38. The Motion incorrectly argues that the only active action taken by Ms. Tirschwell, as alleged in the Complaint, was her signing of board-approved documents. Motion at ¶¶ 30-32. As described above, Ms. Tirschwell's involvement in the underlying fraudulent activity was far greater than that, including, *inter alia*, deciding with Mr. Lefkowitz to orchestrate the scheme (Compl. at ¶ 93); and completing contract bids in the name of YesCare subsidiaries to the suppression of Corizon, alongside Mr. King (Compl. at ¶¶ 105-13). These actions involved the meeting of the minds of two people with the common interest of stripping Corizon for its valuable parts; conduct which advanced the fraudulent scheme to the injury of the Debtor.

39. The Motion further argues that Ms. Tirschwell did not receive a benefit from the fraudulent transfer and that she cannot be held liable for her part in it. Motion at ¶ 33. Contrary to the Motion's framing, Ms. Tirschwell is not alleged to have been a mere participant. *Id.* Ms. Tirschwell was handed the helm of an unencumbered YesCare as its CEO, free from the debts and liabilities that would drive Corizon into bankruptcy by early 2023.

40. Lastly, the Motion asserts that Count III pleads Ms. Tirschwell, Mr. Lefkowitz, and Mr. King as an undifferentiated block in violation of Civil Rule 9(b). Motion at ¶ 26. But this argument ignores simple claim construction. Count III alleges that Ms. Tirschwell was, together with Mr. Lefkowitz, and Mr. King, part of a conspiracy to commit a fraudulent transfer.

41. Those facts specific to Ms. Tirschwell are incorporated by reference into Count III under Compl. at ¶ 259, as permitted by Civil Rule 10(c), as incorporated by Bankruptcy Rule 7010. Ms. Tirschwell's motion to dismiss Count III should be denied.

### C. **The Complaint Provides Ms. Tirschwell with Adequate <u>Notice of the Allegations and Claims Asserted Against Her</u>**

42. Ms. Tirschwell asks this Court to dismiss the Fiduciary Duty Claims under Civil Rule 8(a) contending that the Complaint fails to provide her with fair notice of the claims asserted against her. Motion at ¶¶ 36, 39. As the Motion acknowledges (Motion at ¶ 39), the Plaintiffs have previously argued elsewhere[6] that group pleading is permissible under Civil Rule 8,[7] particularly,

---

[6] Adv. Dkt. Nos. 31 at ¶¶ 49-71, 43 at ¶¶ 32-57.

[7] *Texas v. Rising Eagle Cap. Grp. LLC*, No. 4:20-CV-2021, 2021 WL 10343470, at *2 (S.D. Tex. Sept. 27, 2021) ("Nothing in [Fed. R. Civ. P.] 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.") (internal quotations omitted); *Gammon v. J.W. Steel & Supply, Inc.*, No. CIV A H-02-0647, 2006 WL 2505631, at *1 (S.D. Tex. Aug. 28, 2006) ("Defendants' primary complaint about the complaint is that Gammon has used 'generic group pleading' in alleging conduct that violates ERISA, without distinguishing which acts were committed by which defendant. There is no prohibition against group pleading.").

as here, where the actions alleged[8] are attributable to each member of the collective group.[9]

43. Plaintiffs need not repeat their prior arguments here, as the Complaint contains numerous factual allegations particular to Ms. Tirschwell which support the Plaintiffs' claims that Ms. Tirschwell breached her fiduciary duties.

44. As the Motion notes, under Texas Law, the elements of a claim for breach of fiduciary duty are: (i) the existence of a fiduciary duty, (ii) breach of the duty, (iii) causation, and (iv) damages. Motion at ¶ 36 (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017)). The existence of Ms. Tirschwell's duties to Corizon are established by the allegations setting forth her managerial role as Corizon's Chief Executive Officer. Compl. at ¶¶ 35, 92, 103, 105, 117, 335.[10]

45. In addition to those breaches attributed to all members of "Corizon Management," the Complaint supplies sufficient factual allegations particular to Ms. Tirschwell to support the claims for breach of fiduciary duties in the Fiduciary Duty Claims.

46. **Count VII** concerns how, in the face of the Debtor having a tangible expectation that certain contracts would be pursued on behalf of the Debtor (Compl. at ¶ 296), Corizon Management diverted and exploited for their own benefit these contract bidding opportunities and

---

8 The Motion attempts to draw attention to the fact that the defined term "Corizon Management" does not appear between Compl. at ¶¶ 42-244 (Motion at ¶ 39), the section titled "Factual Allegations" in the Complaint. On a motion to dismiss, Complaints are read in their entirety, and plaintiffs need not limit their factual allegations only to the section which they elected to title "Factual Allegations." *See e.g., Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228,251 (5th Cir. 2009) ("In addition to accepting all of the factual allegations in the complaint as true, courts must consider the complaint in its entirety[.]").

9 *Northstar*, 616 B.R.at 723 ("Where more than one defendant allegedly committed the same act together, a complaint is not defective for the reason that it asserts that all defendants committed the same act, without identifying each individual defendant.").

10 *See e.g., Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014) ("Director, or those acting as directors, owe a fiduciary duty to the corporation in their directorial actions, and this duty 'includes the dedication of [their] uncorrupted business judgment for the sole benefit of the corporation.'") (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)).

chose not to respond to RFPs on behalf of the Debtor, but instead on behalf of newly created YesCare subsidiaries (Compl. at ¶ 295) thus breaching their duties of loyalty.[11]

47. On at least two occasions Ms. Tirschwell, together with Mr. King, pitched RFPs under newly formed YesCare subsidiaries CHS AL and CHS AZ. Compl. at ¶¶ 104-05. Concerning the CHS AZ pitch, Ms. Tirschwell personally intervened to ensure that the bid materials were stripped of any reference to Corizon and substituted with information relating to YesCare. Compl. at ¶ 122, Compl. at ¶ 122 at Ex. L. Ultimately, the Alabama Department of Corrections awarded CHS AL a more than $1 billion contract, a benefit denied to the Debtor in direct relation to Ms. Tirschwell's breach of her fiduciary duties. Compl. at ¶ 113; Compl. at ¶ 113 at Ex. F.

48. **Count IX** details seventeen misdeeds committed or omitted by the members of "Corizon Management" which constituted a breach of their fiduciary duties (Compl. at ¶ 308) each relating to a failure to inform themselves and a failure to exercise reasonable business judgment both in their actions and inactions, to the detriment of Corizon (Compl. at ¶¶ 309-10).

49. The Complaint details how, having been made Corizon's CEO, rather than taking corrective actions to address mounting liabilities and the mismanagement of the company, Ms. Tirschwell decided, along with Mr. Lefkowitz, to implement a restructuring plan to vest YesCare with Corizon's productive assets and favored liabilities while saddling Corizon with all of its debts and historical liabilities, both in tort and contract. Compl. at ¶¶ 92-93, 136, 138.

50. **Count X** details six misdeeds committed or omitted by "Corizon Management" (Compl. at ¶ 314), each of which relates to the failure to exercise reasonable business judgment in approving the divisional merger (Compl. at ¶ 316).

---

[11] *Gearhart Indus., Inc. v. Smith Int'l., Inc.*, 741 F.2d 707, 719 (5th Cir. 1984) ("The duty of loyalty dictates that a director must act in good faith and must not allow his personal interests to prevail over the interests of the corporation.").

51. As detailed above, the result of the divisional merger was Tehum (formally Corizon) being saddled with hundreds of millions of dollars in liability and no functional assets. The benefit Tehum derived from the divisional merger was limited to $1 million in cash from Corizon's accounts, the release of its purported secured debt obligation to M2 Loan Co, LLC., and a right to withdraw from a funding pool capped at $15 million. Compl. at ¶¶ 132, 137.

52. Despite the fact that the practical result of the divisional merger was the utter destruction of the Debtor, Ms. Tirschwell accelerated its demise by issuing a press release announcing to parties formally contracting with Corizon that services were, on a forward-looking basis, going to be provided by YesCare. Compl. at ¶ 152; Compl. at ¶ 152 at Ex. X. This press release spurred follow-on correspondences informing the contracting parties to expect updated payment information, fully completing the capture and consolidation of Corizon's former assets into YesCare. Compl. at ¶¶ 153-154; Compl. at ¶¶ 153-54 at Exs. Y, Z.

**D. <u>Plaintiffs' Fee Claim Should Not Be Dismissed</u>**

53. Ms. Tirschwell argues that Counts III, VII, IX, and X do not support the recovery of attorneys' fees and that the Plaintiffs' claim for attorneys' fees and costs in Count XVI of the Complaint should be dismissed on this basis. Motion at ¶¶ 42-44.

54. But Count XVI of the Complaint requests that the Court award reasonable attorneys' fees and costs "[t]o the extent allowed by applicable law." Compl. at ¶ 354. Thus, the Plaintiffs are only seeking attorneys' fees and costs that are allowed by applicable law. *Id*.

55. This Court does not need to determine, at this stage, whether the Plaintiffs are entitled to attorneys' fees and costs. But, even putting this aside, applicable law supports the Plaintiffs' claim for attorneys' fees and costs. The Plaintiffs have properly pleaded a claim for conspiracy to commit fraudulent transfers, the underlying tort being a TUFTA violation.

56. TUFTA provides for potential attorneys' fee recovery for "any proceeding under this chapter." TEX. BUS. & COMM. CODE § 24.013." Regardless of the Motion's position on what does and does not constitute a proceeding under TUFTA, segregation of fee claims "is not required when legal services advance both recoverable and unrecoverable claims that are dependent upon the same set of facts or circumstances and thus are intertwined to the point of being inseparable." *Nerren v. Krishnamurthy*, No. 7-25-66-CV, 2026 WL 130817, *10 (Tex. App. Jan 16, 2026) (internal quotations omitted); *Thomas v. Hughes*, 27 F.4th 995, 1020 (5th Cir. 2022).

57. Here, all counts against Ms. Tirschwell are, at minimum, inseparably intertwined with the underlying fraudulent transfers and her role in facilitating their execution. Accordingly, Count XVI, as to Ms. Tirschwell, is not ripe for dismissal.

**E. <u>A More Definite Statement Is Not Required</u>**

58. Ms. Tirschwell argues, in the alternative, that if her request for dismissal is denied, the Plaintiffs should be required to amend the Complaint to provide a more definite statement of the Fiduciary Duty Claims. Motion at ¶ 45-47.

59. But, as Ms. Tirschwell admits, a motion for a more definite statement is appropriate only if a complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." Motion at ¶ 18.

60. As outlined above, the Complaint contains detailed allegations of the conduct constituting Ms. Tirschwell's breaches of her fiduciary duty that are sufficient to identify a plausible claim for breach of fiduciary duty upon which relief could be granted.

61. The Complaint already pleads the breaches of fiduciary duty at issue for Ms. Tirschwell and does not require a more definite statement. *See Brown v. Maxxam*, No. CIV A 90-1468, 1991 WL 13918 at *3 (E.D. La. Jan. 28, 1991) (denying motion for more definite

statement where plaintiff collectively pled that a group of defendants breached fiduciary duties); *see also In re Giant Gray*, 629 B.R. 814, 855 (Bankr. S.D. Tex. 2020) (denying motion for more definite statement as to collective pleading of multi-defendant fraudulent transfer scheme, on the basis that "there are enough facts elsewhere in the complaint to render it plausible that [plaintiff] has a plausible claim against [defendants] upon which relief could be granted.").

62. The fact that Ms. Tirschwell has knowledge of her exact role in the breaching conduct at issue, further forecloses her contention that the Complaint is fatally unintelligible. *Babcock & Wilson Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633-634 (E.D. La. 2006) ("This motion is further disfavored when 'the particular information defendant is seeking is within defendant's own knowledge, which mitigates in favor of denying the motion.' … Defendants' own motion demonstrates their understanding of the claims asserted and their knowledge of facts underlying those claims.").

63. Indeed, the fact that Mr. Isaac Lefkowitz himself has answered the Complaint's fiduciary duty claims (*see* Adv. Dkt. No. 30), including the factual allegations that use the term "Corizon Management," shows that such claims can be answered. *Brown*, 1991 WL 13918 at *3 ("The ability of the other defendants to answer the plaintiffs' complaint casts considerable doubt on the proposition that the complaint is vague and ambiguous enough to make it unreasonable to require [moving defendant] to file a responsive pleading.").

64. As the Court held in *Giant Gray*, Civil Rule 12(e) "is intended for complaints that are unintelligible, not complaints that merely lack detail" and all that is required for pleading purposes is that "there are enough facts elsewhere in [the] complaint to render it plausible that [plaintiff] has a plausible claim against [defendants] upon which relief could be granted." 629 B.R. 814 at 855. The Complaint and its allegations of Ms. Tirschwell's breaches of her fiduciary

duties meet this standard. Any additional information that Ms. Tirschwell desires regarding the claims must be sought through discovery, not a motion for more definite statement. *Id*. at 854 ("[I]f the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied."). For the foregoing reasons, the Motion for a more definite statement under Civil Rule 12(e) should be denied.

## CONCLUSION

65. The Complaint provides Ms. Tirschwell with fair notice of the claims asserted against her and plausibly alleges each challenged claim. The Motion should be denied.

Dated: September 8, 2026

Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Eric R. Goodman*
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Susan Sieger-Grimm (*pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: egoodman@brownrudnick.com
cmoxley@brownrudnick.com
gcicero@brownrudnick.com
ssiegergrimm@brownrudnick.com

**STINSON LLP**

*/s/ Nicholas Zluticky*
Nicholas Zluticky (SDTX Bar No. 3845893)
Zachary H. Hemenway (SDTX Bar No. 3856801)
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email: nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic means via the ECF transmission to all PACER System participants in this proceeding on September 8, 2026.

*/s/ Eric R. Goodman*
Eric R. Goodman